[L.A. No. 30208. In Bank. May 1, 1974.]

EUGENE P. TAYLOR, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Eugene P. Taylor, in pro. per., for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be suspended from the practice of law in this state for a period of three months. Petitioner was admitted to practice in California in 1965,[1] and he has no prior record of discipline.

In an order to show cause, dated January 25, 1972, petitioner was charged with having accepted employment in or about February 1966 to pursue a personal injury suit on behalf of Richard Burton, the minor son of Mr. and Mrs. William Burton, and William Burton, and, after having filed suit and performed other acts, neglecting to pursue the case further and refusing to answer inquiries of the clients, thus, in effect, abandoning his obligations as an attorney at law in the matter (count 1), and with having violated an order of this court suspending him from the practice of law for nonpayment of an annual State Bar membership fee by filing a divorce action and appearing as attorney for the plaintiff at a hearing on an order to show cause in the domestic relations case of Goodkin v. Goodkin in the Superior Court of Los Angeles County in June 1969 (count 2).[2]

By an answer, dated September 19, 1972, petitioner denied failing to prosecute the Burton case or refusing to answer inquiries of the clients; and he denied intentionally violating the suspension order or wilfully misrepresenting his status as an attorney to the judge presiding in the Goodkin matter.

Between June 13, 1969, and April 4, 1971, petitioner was in active military service. During that period of time, no formal charge against him could be made, tried, or heard, with certain exceptions not here applicable.

---

[1] Petitioner was admitted to practice law in the District of Columbia in 1953 and in New Jersey in 1954.

[2] At the time of the hearing herein, petitioner was married to the plaintiff in the Goodkin action.

A hearing was held before the local administrative committee on November 13, 1972. At the commencement of the hearing, petitioner made an objection, claiming that he had been prejudiced by the delay in the institution of the proceeding, because, he said, an earlier notice to show cause on the same counts, for hearing 30 days thereafter, had been served on him while he was on active duty with the military, which notice to show cause had been cancelled, and that after leaving active service in 1971 he had inquired of the State Bar in San Francisco and been told that there were no proceedings pending against him and he had received from the State Bar a certificate of good standing. The prejudice claimed was that he thereafter dropped his contacts with a witness who, he stated, would have corroborated him by testifying to delivery of his file to the Burtons or their new attorney in July or August 1969. Information subsequently obtained shows that petitioner's claim of having been served with a prior notice to show cause is without evidentiary foundation.[3]

The trial committee noted the evidence in rebuttal of facts alleged by petitioner with respect to the earlier notice to show cause claimed to have been served on him and found that petitioner had not exercised any diligence in trying to locate the witness and that the evidence offered to be shown by the witness would not affect the committee's findings, conclusions, and recommendations as to count 1.

On the merits, the trial committee found culpability on petitioner's part as to both counts 1 and 2 and recommended a one-year suspension on terms of probation, including actual suspension for 30 days.[4]

Petitioner did not appear before the disciplinary board, but, instead, filed a written statement. The examiner likewise filed a written statement. The disciplinary board then, on June 14, 1973, by a vote of 11 to 0,

---

[3]By stipulation, the examiner for the State Bar was requested to obtain information with respect thereto and to submit it by letter to the committee, with a copy to petitioner. Petitioner was given time to respond if desired, but he did not respond. The information shows that on November 19, 1969, petitioner was personally served with a letter informing him that an "informal preliminary investigation" was scheduled for December 9, 1969, in Los Angeles and requesting his appearance, but that the hearing was cancelled because of petitioner's military status.

[4]The trial committee further recommended as a term of probation that during the balance of the one-year period petitioner was to continue in his present employment by a single client or in employment by another similar employer, and that in the event of termination of any such employment petitioner was not to engage in the private practice of law except upon a full time and exclusive basis. Such a condition, however, is inconsistent with the "general" form of the license to practice law in this state; and the disciplinary board did not include such a term in its recommendation.

adopted the findings of the trial committee (with a technical addition as to petitioner's various admissions to the practice of law) and adopted a resolution recommending that he be suspended for three months, without terms of probation. A further resolution was adopted, with one dissent, that if this court should follow the board's recommendation as to discipline, it should not require petitioner to comply with the provisions of rule 955, California Rules of Court.

In 1966, and at least until May 8, 1967, petitioner maintained an office for the practice of law at 315 South Beverly Drive, Beverly Hills. At a time which was fixed only approximately by the testimony, petitioner moved to a nearby office (hereinafter referred to as "the new office"). He at first said he believed the move took place in February 1967; but he later said (after examining a copy of the complaint filed in the Burton matter) that he thought it was February 1968. The official roll of attorneys maintained by the State Bar showed the 315 South Beverly Drive location as petitioner's office address as of the date of his admission to practice. By an entry made August 9, 1967, the office address was shown to be 241 South Beverly Drive.

Petitioner testified that at the new office his law practice diminished as "old" cases "terminated." At a time placed by petitioner as "sometime in the beginning of 1968" and "spring of 1968," he went into business, as opposed to practicing law. He said that he was in business in a motion picture production company and a motion picture distribution company at the new office and that he had to do a great deal of traveling. He said that by the summer of 1968 he had no law practice except for the Burton matter and perhaps one or two others.

In June 1969, petitioner went on active duty with the military. He later returned temporarily to the Los Angeles area, but the time of his return is in dispute. In about September 1969, petitioner moved his residence to Northern California (Moraga) near San Francisco, where he was stationed in the military. Thereafter, he said he had no further participation in the office at 241 South Beverly Drive. He did not, however, at that time notify the State Bar of a change of his official address.

In April 1971, petitioner's active military service terminated. Through the San Francisco office of the State Bar, he paid delinquent membership fees for 1968, 1969, and 1970, plus penalties, as well as the then current fee. On May 12, 1971, the State Bar acknowledged such payments and advised this court that petitioner was entitled to active status. In connection

with such "reinstatement," petitioner gave his Moraga address as his official address.

At the time of the trial hearing in November 1972, petitioner was employed in the Los Angeles area as associate counsel for a title insurance company.

Petitioner urges that the delay in the proceedings by the State Bar prejudiced his defense, that reasonable doubts should be resolved in favor of the accused attorney, and that the discipline recommended is too severe for the offenses charged. ■ As pointed out by this court on innumerable occasions, however (see, e.g., *In re Plotner,* 5 Cal.3d 714, 716 (1) [97 Cal.Rptr. 193, 488 P.2d 385]; *Mack* v. *State Bar,* 2 Cal.3d 440, 443 (1) [85 Cal.Rptr. 625, 467 P.2d 225]), the burden is on petitioner to show that the disciplinary board's recommendation is erroneous or unlawful; and petitioner has not met this burden.

*Burton Personal Injury Matter—Alleged Violation by Petitioner of his Oath and Duties as an Attorney*

■ In January 1966, Richard Burton, then about 15½ years old, was severely injured while on a bicycle when he was struck by an automobile driven by a Mrs. Kennedy, who was then in her 80's. Richard's parents knew petitioner through church membership, and shortly after the accident petitioner was employed to handle the case on a contingent fee basis. On May 8, 1967, more than a year after the accident, petitioner filed a civil action through the firm of Gordon and Taylor. It sought damages for Richard's personal injury and, in a second count by Mr. Burton, a co-plaintiff, recovery of hospital and medical expenses incurred. Some time after the initial conference with petitioner, the Burtons paid him $35 for the filing fee.

The Burtons would see petitioner after church, and they apparently both felt that the case was progressing well for about a year. They testified, however, that after petitioner moved to the new office, it was difficult to reach him and that they made various telephone calls and left messages, without success. Mr. Burton said that he took a day off from work in May or June 1968 to go to the new office in an effort to contact petitioner, but did not find him there and received no response to a note left on petitioner's desk requesting that petitioner call him.

Mrs. Burton testified that she and Richard had in August 1968 dropped in at the new office and found petitioner in. She said that petitioner assured them at that time that the case would be completed within a few months

and that, as a result, their faith in petitioner was restored. After that visit, however, petitioner never contacted them.

Mr. Burton testified that in August 1969 he made an appointment over the telephone for the three of them to see petitioner on August 28, 1969, but that although they went to the new office at the time set and waited half an hour, petitioner did not appear. He said that he left word for petitioner to call him, but he never heard or talked with petitioner after making the telephone appointment.

The Burtons then contacted the local bar association and were referred to the State Bar. Mrs. Burton said that they knew they were under a contract with petitioner to handle the case, and they did not want to do anything wrong.

In October or November 1969, Mr. Burton obtained a new attorney, who was substituted as plaintiffs' counsel. On July 15, 1970, the case was concluded by approval of a minor's compromise for $6,700. Of this amount, $1,938.61 was allowed for attorney's fees and expenses, and the balance of $4,761.39 was to be held for the minor. No attorney's fee was paid to petitioner.

Petitioner testified that although he made efforts to do so, he was not able to locate Mrs. Kennedy, the driver of the car which struck Richard, but that he was able to locate her insurer, a small company which had headquarters outside of California; that through adjusters employed by it in California he negotiated a settlement offer of $6,000, which he submitted to the Burtons; that the Burtons rejected the offer and authorized him to try to obtain $8,000; and that he attempted to obtain a higher offer through the adjuster, but nothing was heard from the insurer over a long period of time. The Burtons could recall little or nothing about the settlement proposals about which petitioner testified, but Mrs. Burton said that she recalled petitioner's telling her about difficulty in locating Mrs. Kennedy. Petitioner said that the $6,000 settlement discussion was "probably" in March or April 1968. He further testified that in July or August 1969 he received a letter from Mr. Burton advising that he wished to change attorneys and that, being in the military service, he had contacted a friend, a Mr. Rubenson, to obtain the file from his office or home and deliver it to the Burtons or their new attorney, as they wished. Petitioner said that later in the year he received word from Mr. Rubenson that the file had been delivered. He also said that he had indicated he would give Mr. Burton a release or "whatever he needed for another attorney."

From the time he was employed in early 1966 until June 1969, peti-

tioner had had a period of more than three years in which to trace Mrs. Kennedy, either personally or through investigators; but he failed to "locate her." From the record, it is apparent that petitioner gave no adequate explanation for his failure during such period of time to locate the driver of the car which caused the injury, to prosecute the lawsuit, and to protect the causes of action.[5] Petitioner, however, admittedly had located the insurer and obtained a settlement offer "probably" in March or April 1968. It was at that time, it will be recalled, that he began to devote his efforts principally to business activities.

Petitioner's course of inattention and sporadic effort over a long period of time in the prosecution of the lawsuit is not only inconsistent with his oath and duties as an attorney, but could seriously have jeopardized his clients' rights.

Petitioner said that he left private practice because he did not have sufficient funds or clientele to maintain a private law practice and that at the time he entered the military service in June 1969 he was not practicing law to any extent, his only law business being the Burton and Goodkin cases. Although he said that he expected his active military service to result in only a temporary absence from the Los Angeles area, he was away until April 1971. He admits that he never informed the Burtons that he was going into the military service and would not complete their case. He did indicate, however, that he thought everyone in the church of which both he and the Burtons were members knew that he was leaving to go into the military service. Even though petitioner apparently expected to return from military service in September 1969, and even though the church membership generally knew he was going into the military service, he still owed a duty to his clients to reveal the material change of circumstances that affected the conduct of the legal matter which they had entrusted to him.

Furthermore, as hereinabove indicated, petitioner gave assurances to Mrs. Burton and Richard in August 1968 that the case should be completed in the very near future, and a finding was made that petitioner knew the representation to be false, because the complaint and summons had

---

[5]Petitioner testified that after he was employed, he went to Mrs. Kennedy's address and found that she had moved; that he had an investigator go there and "we were unable to find a good address for her"; that after August 1968 (when he met with Mrs. Burton and Richard) he continued "to attempt to find" Mrs. Kennedy; and that his original file should show returns from the sheriff that the latter on two occasions was unable to serve Mrs. Kennedy with summons "at addresses we had given."

not been served, and no other steps had been taken which would result in a conclusion of the case.

With respect to the appointment which Mr. Burton claimed he had made for August 28, 1969, petitioner testified that he did not recall the appointment and thought that Mr. Burton was in error, as he thought he was not in Los Angeles in August but was there some time in September. Documentary evidence, however, substantiates Mr. Burton's account. Petitioner wrote a letter, dated September 18, 1969, to the State Bar, indicating that he had just returned from a period of extended military duty in Kansas, but the envelope in which the letter arrived was postmarked in Beverly Hills August 18, 1969, and the face of the letter bears the "Received" stamp of the Los Angeles office of the State Bar with the date of "Aug 19 1969."

Under all the circumstances, the finding of culpability on count 1 (the Burton count) is warranted.

*Violation of Suspension Order of December 19, 1968*

Petitioner failed to pay his annual membership fee under the State Bar Act for the calendar year 1968. On December 19, 1968, he was suspended from the practice of law by order of this court until all fees and penalties were paid. As hereinabove indicated, petitioner eventually paid all delinquent fees and penalties on May 12, 1971, and he was reinstated at that time.

About June 1969, just before he was to enter active military service, petitioner filed a divorce action in the Superior Court of Los Angeles County in Goodkin v. Goodkin; and he appeared on behalf of the plaintiff at an order to show cause hearing on June 12, 1969. Opposing counsel raised the question of petitioner's status as an attorney, but petitioner claimed that he had not been suspended, as he had received no notification thereof. The judge presiding permitted petitioner to appear. Following the hearing, petitioner contacted the Los Angeles office of the State Bar and learned that he had been suspended. Because of the suspension, and also because he was going into active military service, he then withdrew from the case, and another attorney was substituted.

Before an order is made by this court suspending a member for nonpayment of State Bar dues under section 6143 of the Business and Professions Code, the State Bar's San Francisco office sends *three* communications by mail to the attorney. The statutory notice required by section 6143 is sent by registered or certified mail.

In petitioner's case, proof of service was filed showing that on December 31, 1968, a copy of this court's order of December 19, 1968, was served on petitioner by mail. The address to which the communication was sent was that shown on the roll of attorneys, i.e., 241 South Beverly Drive, Beverly Hills, California 90212. Petitioner continually testified that he had moved only once in Beverly Hills and that the move was from 315 South Beverly Drive to *222* South Beverly Drive. He denied repeatedly that he had ever had an office at 241 South Beverly Drive. He admitted vaguely receiving some type of notice, but said he did not relate it to the 1968 dues. Finally, when shown a letter written by him to the State Bar dated September 18, 1969, on his letterhead, which showed his address as 241 South Beverly Drive, he testified that unquestionably that was his correct address in December 1968; but he said that he still did not recall receiving a notice of suspension.

There was a presumption that petitioner received the notice in the ordinary course of mail. (Evid. Code, § 641.) As the presumption is one affecting the burden of producing evidence, petitioner's testimony denying receipt rebutted the presumption. The trier of fact, however, is permitted "to draw any inferences that may be appropriate." (Evid. Code, § 604.)

Here, petitioner's stated reason for non-receipt of the notice, that is, that he had never had an office at 241 South Beverly Drive, was shown to be false; and he admitted that he had received other mail sent to him by the State Bar during the relevant period, as he had been defending another attorney in a State Bar proceeding and had much correspondence with the State Bar with respect thereto. That mail was sent to petitioner at 241 South Beverly Drive.

Furthermore, petitioner had no employees and very little law practice at that time and cannot claim that he failed to receive personal knowledge because of a busy law office or by delegation of dues payments to a subordinate.

Although petitioner was required to do a great deal of traveling in connection with his business activities, the time lapse between the normal receipt of the notice through the mail and the questioned activities in the Goodkin matter was almost six months. Hence, even if petitioner had been absent temporarily on trips, there was ample time for him to have received the notice. Petitioner at one point at the hearing admitted that he had received a notice as to his being late in the payment of his State Bar dues, but said it was for either 1967 or 1968.

The trial committee, which had the opportunity of seeing and hearing

petitioner as a witness, found that he had received a notice of suspension; and weight should be given to its determination. (*Himmel* v. *State Bar,* 4 Cal.3d 786, 794 (4) [94 Cal.Rptr. 825, 484 P.2d 993].)

*No Prejudice by Alleged Delay in Instituting Formal Charges*

■ It is well settled that the time limits of rules 21(a) and 34, Rules of Procedure of the State Bar (West's Bus. & Prof. Code, foll. § 6087 [Deerings, Rules of Procedure of the State Bar, rules 21(a) and 34]), are not jurisdictional and that a showing of prejudice must be made by reason of such delay. (*Lewis* v. *State Bar,* 9 Cal.3d 704, 714 [108 Cal.Rptr. 821, 511 P.2d 1173]; *Mrakich* v. *State Bar,* 8 Cal.3d 896, 906 [106 Cal.Rptr. 497, 506 P.2d 633].) Petitioner has not made a showing of either unreasonable delay or prejudice from the delay.

No *formal* charge may be issued against a member of the State Bar without his consent when he is in active military service. (Rule 18, Rules of Procedure of the State Bar.) ■ Since there was no consent by petitioner, the earliest a formal charge could have been issued was April 5, 1971, when petitioner's active service terminated. The formal charge was actually issued January 25, 1972, and service was made on August 28, 1972. The hearing was held on November 13, 1972. Accordingly, the delay was not excessive in the circumstances of this case.

In any event, it was not established that the delay was prejudicial within the meaning of the cases, and the trial committee so found. The only possible prejudice asserted was that petitioner had lost "contact" with a long-time friend, whose testimony, he said, would support petitioner's claim that the file had been delivered to the Burtons or their attorney. After the notice to show cause was served on petitioner in August 1972, he had time to try to locate the witness before the trial hearing. In addition, he had a period of six months after the trial hearing and before the hearing of the disciplinary board to locate and obtain an affidavit from the witness and to make application to the disciplinary board for leave to present additional evidence under rule 39.1, Rules of Procedure of the State Bar; but he did not do so.

Petitioner also asserts prejudice in that he testified that he visited the State Bar office in San Francisco in the middle of 1971 and was told that there were no proceedings pending and received a written certificate, which he described as a "certificate of good standing." The examiner's report, dated December 12, 1972, in augmentation of the record, indicated that inquiry of employees of the State Bar did not support petitioner's statements. Under the State Bar's records retention practices, no such records

for the period of mid-1971 were preserved as of the time of the inquiry over a year later. Petitioner did not offer in evidence a copy of the certificate of good standing allegedly given to him. Submission of a copy thereof by petitioner could have resolved the uncertainty.

It is ordered that petitioner be suspended from the practice of law for a period of three months, effective 30 days after the filing of this opinion.

Wright, C. J., and Sullivan, J., concurred in the order.