[L.A. No. 30203. In Bank. Jan. 7, 1975.]

FREDRIC A. SPINDELL, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Fredric A. Spindell, in pro. per., Saltzman & Goldin and Martha Goldin for Petitioner.

Herbert M. Rosenthal and Ronald W. Stovitz for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar (Board) that petitioner Fredric A. Spindell be suspended from the practice of law in this state for a period of one month.

Petitioner was admitted to the practice of law in 1954. He has been involved in one prior disciplinary proceeding concerning his representation of two clients in separate bankruptcy matters.[1]

On September 14, 1971, petitioner was charged in a notice to show cause with the violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067, 6068) and the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106). The notice to show cause was issued after a preliminary investigation was conducted to determine the veracity of a complaint against petitioner filed with the State Bar by one Patricia Amey.

On July 26, 1972, following an informal discovery conference pursuant to rule 14.9 of the Rules of Procedure of the State Bar, petitioner through his then counsel (not his counsel in the present review proceedings) and the State Bar through its examiner entered into a stipulation in writing pursuant to rules 14.9 and 34.1 of the Rules of Procedure. In this document, petitioner stipulated that he had been retained by Mrs. Amey to represent her in a divorce proceeding; that despite her repeated attempts to communicate with him about her case, he had wilfully failed and refused to communicate with her; that Mrs. Amey thereafter contacted the State Bar concerning his lack of communication with her; that in response to several letters sent to him by the State Bar, he replied by letter dated October 10, 1969; that he had attempted to make service of summons upon her husband on several occasions; that he had since

---

[1] In May 1968, petitioner was retained by each client to perform all necessary services in bankruptcy proceedings. He collected $150 from each for his fee and costs. However, he failed to prepare a petition and supporting schedules to have his clients adjudicated bankrupts despite their repeated requests to do so. Thereafter, both clients retained other counsel and demanded the return of the monies paid, which petitioner had commingled with his own funds. In November 1968, petitioner returned the money to one client after first having converted it to his own use; he did not repay the other until the commencement of a preliminary investigation by the State Bar in February 1969. The Board concluded that although petitioner's conduct did not constitute moral turpitude, he had wilfully commingled the money of his clients with his own (Rules of Prof. Conduct, rule 9) and that he had violated his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6103). Petitioner was publicly reproved in May 1971.

proceeded to make service of summons by publication and that he was ready to proceed by default as soon as military affidavits were secured; that his representation to the State Bar that he had proceeded to effect service of summons by publication was false and untrue at the time he made it; that despite his subsequent representations to the State Bar that he would proceed on the divorce matter, he wilfully failed and refused to do so until the institution of further disciplinary proceedings against him; and that he wilfully failed and refused to protect the interests of his client and failed to faithfully discharge his duties as attorney for Mrs. Amey.[2]

After a hearing on August 16, 1972, the local administrative committee found that petitioner violated his oath and duties as an attorney and recommended that he be suspended from practice for 30 days, but that such discipline be stayed so long as no further discipline be imposed for two years and that he be publicly reproved. The Board made findings substantially the same as those of the local administrative committee. However, the Board believed that more severe discipline was needed; it took into account petitioner's prior disciplinary record (rule 29.1, Rules of Proc. of the State Bar; see fn. 1, *ante*) and recommended that petitioner be suspended from the practice of law for a period of one month.[3]

The facts as found by the local committee and adopted by the Board with minor amendments are in substance as follows:

In January 1966 petitioner was retained by Mrs. Amey to represent her in a domestic relations proceeding. Petitioner had accepted this employment and received from Mrs. Amey all sums of money requested by him at that time. On many occasions from January 1966 until the fall of 1969 Mrs. Amey attempted to contact petitioner concerning the progress of the matter, but he wilfully failed and refused to communicate with her. On one such occasion, petitioner's secretary, Betty Dorsette, informed Mrs. Amey that it was permissible for her to remarry at that time. In

---

[2]The stipulation further provided: "IT IS FURTHER STIPULATED that the Committee hearing this matter may make findings in accord with the above-stated facts without any further evidence being presented in support thereof.

"IT IS FURTHER STIPULATED that each party hereto reserves the right to present to the Committee such further evidence in support of the above items as the party may deem proper."

[3]The Board approved the action taken by a vote of nine to one. The member voting in the negative did so on the ground that the degree of discipline recommended was insufficient.

reliance upon this representation, she did so in January 1967.[4] In fact, no final decree of divorce had been entered; petitioner did not even file a complaint until June 1968.

Mrs. Amey thereafter contacted the State Bar concerning petitioner's failure to communicate with her. In response to several inquiries by the State Bar, petitioner finally replied by letter dated October 10, 1969, that on several occasions during the period from July 1968 through March 1969 he had attempted to make service of summons personally on Mrs. Amey's husband but without success and that he had thereafter proceeded to effect service by publication. This last representation as to service by publication was untrue.

The local committee and the Board further found that petitioner failed to adequately supervise his office personnel, that despite the fact that Mrs. Amey's husband was personally served in July 1969 and proof of service filed in January 1970 and despite petitioner's representation to the State Bar that he would proceed on this matter, he wilfully failed and refused to do so until after the institution of further State Bar disciplinary proceedings against him and did not secure the judgment of dissolution until May 1971.

The conclusions made by the local administrative committee and adopted in substance by the Board were that petitioner wilfully failed and refused to protect the interests of his client, Mrs. Amey, and failed to faithfully discharge his duties as her attorney; that, however, the evidence was not sufficient to show that he knew his statement concerning the publication of summons was false; and that although his wilful failure to communicate with his client did not constitute an act of moral turpitude, it did constitute a violation of his oath and duties as an attorney within the meaning of Business and Professions Code section 6103 as prescribed by sections 6067 and 6068 of said code. As previously stated, the Board recommended that petitioner be suspended from the practice of law for a period of one month.

Petitioner contends that the evidence is insufficient to demonstrate that his conduct in failing to communicate with his client, to protect her interests and to faithfully discharge his duties as an attorney was wilful. He also claims that a one-month suspension from the practice of law is excessive discipline since he has, in his opinion, rehabilitated himself.

---

[4]Although on her remarriage she assumed the name of Patricia Butler, we shall refer to her herein as Patricia Amey.

█ Petitioner's contention regarding the sufficiency of the evidence is devoid of merit. █ While it is true, as petitioner asserts, that we are not bound by the findings of the local committee and the Board, these findings must be given great weight, especially when, as in this case, they rest primarily on testimonial evidence. (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 852 [100 Cal.Rptr. 713, 494 P.2d 1257].) █ In reweighing the evidence and passing upon its sufficiency, we resolve all reasonable doubts in favor of the accused; however, he bears the burden of showing that his conduct was not wilful and did not violate his oath and duties as an attorney. In meeting this burden, he must demonstrate that these findings " 'are not sustained by convincing proof and to a reasonable certainty.' " (*Vaughn* v. *State Bar, supra,* at p. 852.)

█ In his testimony before the local committee petitioner did not dispute his utter failure to attend to the needs of his client, Mrs. Amey. Indeed, he referred to his representation of Mrs. Amey as characterized by "extreme neglect." However, he argued that his conduct was not wilful, as he had no knowledge of the facts making his actions wrongful. He attributed his failure to communicate with his client to his secretary, Mrs. Dorsette, who had apparently failed to give him a substantial number of Mrs. Amey's telephone messages and on some occasions correspondence sent him. This was confirmed in part by Mrs. Dorsette's testimony. She admitted withholding from petitioner as many as three or four out of ten messages. Petitioner explained that Mrs. Dorsette's employment was terminated in June 1970, that he had hired a new secretary to put the office in order and that he had associated another attorney to assist him in giving greater attention to clients. He also stated that he had moved his law office in September 1969 and that this was a contributing cause of the delay in obtaining a judgment of dissolution for Mrs. Amey.

Petitioner denied being aware that the statement in the October 1969 letter was false. He explained that he had no knowledge that Mr. Amey had been personally served in July 1969 and that he was under the impression that service of summons had been effected by publication because he saw an application for an order for publication of summons in his file. Mrs. Dorsette explained that the order had never been made because of several defects in the application.

Petitioner presented in his defense several witnesses who attested to his good character. Generally speaking, they described him as honest, trustworthy, and helpful to other attorneys. One witness expressed the belief that petitioner was devoted to his clients, at least in criminal cases.

However, even if we accept petitioner's contention that he lacked knowledge of Mrs. Amey's attempts to communicate with him and that he did not deliberately intend to ignore her needs, his conduct in the instant case fully supports the Board's finding of a wilful dereliction in the discharge of his professional duties to Mrs. Amey. ■ Failure to communicate with, and inattention to the needs of, a client are proper grounds for discipline. (See *Taylor* v. *State Bar* (1974) 11 Cal.3d 424, 429-432 [113 Cal.Rptr. 478, 521 P.2d 470]; *Montalto* v. *State Bar* (1974) 11 Cal.3d 231, 235 [113 Cal.Rptr. 97, 520 P.2d 721].) ■ Petitioner's failure to communicate with his client despite her persistent efforts to speak with him and his delay in obtaining a dissolution of marriage demonstrate, in his own words, "extreme neglect." His neglect, as the Board found, resulted in actual prejudice to his client. She remarried upon his secretary's assurance that it would be proper to do so when, in fact, her prior marriage remained intact. Neither does it matter that the harm suffered by Mrs. Amey can be attributed, in part, to petitioner's secretary. An attorney has an obligation to adequately supervise his employees (*Vaughn* v. *State Bar, supra*, 6 Cal.3d 847, 857-858; *Moore* v. *State Bar* (1964) 62 Cal.2d 74, 80-81 [41 Cal.Rptr. 161, 396 P.2d 577]), and the record establishes that petitioner failed to fulfill that obligation here.

None of the facts presented in the record justify a delay of more than five years in procuring a judgment of dissolution. Even after Mrs. Amey turned to the State Bar for assistance, petitioner continued his pattern of neglect; nearly another two years elapsed before petitioner obtained a final judgment of dissolution. Under these circumstances the record amply establishes that petitioner wilfully failed to discharge his duties as an attorney, regardless of whether or not he acted intentionally in bringing about the events which occurred. (*Vaughn* v. *State Bar, supra*, 6 Cal.3d at p. 859; *Moore* v. *State Bar, supra*, 62 Cal.2d at p. 81.)

Furthermore, in the stipulation entered into between petitioner and the State Bar, petitioner expressly admitted that he "willfully failed and refused to protect the interests of his client." He is therefore precluded from arguing that evidence of wilfulness is lacking. ■ A stipulation "is conclusive upon the parties, and the truth of the facts contained therein cannot be contradicted" unless permission is given to withdraw from the stipulation. (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 141-142 [199 P.2d 952]; see also *Estate of Stickelbaut* (1960) 54 Cal.2d 390, 394 [6 Cal.Rptr. 7, 353 P.2d 719]; 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 125, pp. 137-138.) At no point in the instant

proceedings has petitioner requested to be relieved of the effect of his stipulation; if his contention might be construed to constitute such a request here, we decline to grant it.[5]

■ We turn to petitioner's contention that the recommended discipline of one month suspension is excessive. He asserts that actual suspension is not warranted in light of the fact that he has taken corrective measures to avoid a future reoccurrence of this type of problem in his office. More specifically, he discharged Mrs. Dorsette, employed two full-time secretaries, associated an attorney to handle his civil cases and limited his practice to criminal matters. He also claims that in recommending a one-month suspension, the Board failed to consider the fact that the present proceedings have been pending for more than three years.

■ There is no "fixed formula" in deciding what discipline should be imposed on a member of the State Bar; rather, our determination must be based on a "balanced consideration of the relevant factors." (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289]; see also *Ames* v. *State Bar* (1973) 8 Cal.3d 910, 921 [106 Cal.Rptr. 489, 506 P.2d 625].) Those factors, in general terms, include not only the "moral fitness" of an attorney but also the need "to afford protection to the public, the courts and the legal profession." (*Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 151 [77 Cal.Rptr. 657, 454 P.2d 329].) Consideration may also be given to the "presence or absence of a prior disciplinary record" (*Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 715 [108 Cal.Rptr. 821, 511 P.2d 1173]; see also rule 29.1, Rules of Proc. of the State Bar), the ordeal of enduring lengthy disciplinary proceedings (*Vaughn* v. *State Bar* (1973) 9 Cal.3d 698, 703 [108 Cal.Rptr. 806, 511 P.2d 1158]), and the harm suffered by others as the result of the attorney's conduct. (*Bernstein* v. *State Bar, supra,* 6 Cal.3d at p. 918.)

---

[5]Although the written document executed by petitioner, his counsel and the hearing examiner for the State Bar was entitled as a "stipulation," it might also be regarded as an admission. Normally, a stipulation is defined as an agreement between or among *counsel* for adverse parties in which the latter do not participate. (See Black's Law Dictionary (4th rev. ed. (1968) p. 1586; 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 124, p. 137.) Where the *parties* themselves agree to certain facts, the agreement is referred to as an "admission." (Black's Law Dictionary, *op. cit. supra,* p. 68.) Both stipulations and admissions of facts are specifically provided for in rule 34.1 (Rules of Proc. of the State Bar). The rule encourages the use of stipulations and admissions and indicates that they will obviate the production of formal proof unless a party is relieved of their effect. Thus, whatever the appropriate title for the document might be, it is clear that the facts agreed to in it are binding on petitioner.

It is true, as petitioner asserts, that we are not concerned here with the question of moral fitness, since the Board found that petitioner's conduct did not constitute moral turpitude. Furthermore, petitioner has been subjected to lengthy disciplinary proceedings in the instant case. These present proceedings were initiated informally shortly after June 1969, and formally in September 1971.

Nevertheless, we believe that a one-month suspension from the practice of law is appropriate despite the presence of mitigating facts. The record shows that petitioner's professional misconduct continued for a period of more than five years, from January 1966 when Mrs. Amey retained him to represent her, until May 1971, when he finally secured the judgment of dissolution. During this period petitioner's conduct evidenced a total disregard for the needs of his client, despite her frequent attempts to communicate with him and despite the State Bar's intervention on her behalf. Petitioner's conduct resulted in actual prejudice to his client and her second husband, who married in reliance upon his secretary's false representation that Mrs. Amey was free to do so.

Taking into account all of these circumstances, as well as the prior disciplinary proceedings,[6] and the necessity of protecting the public and the integrity of the legal system, we regard the discipline of a one-month suspension from practice to be fully justified.

It is therefore ordered that Fredric A. Spindell be suspended from the practice of law in this state for a period of one month. The suspension shall commence 30 days after the filing of this opinion.

Richardson, J., did not participate therein.

Burke, J., retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council participated therein.

---

[6]There is no merit to petitioner's argument that the prior disciplinary proceedings should not be considered in determining the degree of discipline because the conduct complained of in the prior proceeding occurred at the same time as the conduct involved here. In other words, he suggests that prior discipline is significant only when it serves as a warning to an attorney. As in *Lewis* v. *State Bar, supra,* 9 Cal.3d 704, 715, we reject this argument because it ignores the fact that more severe discipline would have been warranted in the prior proceedings had the facts in this proceeding been known; and further, that a suspension is appropriate here even in the absence of a prior disciplinary record.