[L.A. No. 31249. Jan. 8, 1981.]

WILLIAM U. FINCH, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

William C. Starrett II, Robert P. Sprague, Neben & Starrett and Edward Shambaugh for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

**THE COURT.**—Review of recommendation of the State Bar Disciplinary Board that petitioner be suspended from the practice of law for five years, that execution of the suspension be stayed and that petitioner be placed on probation for five years on conditions including (1) participation in psychiatric and psychological counseling; (2) abstention from intoxicants and drugs; (3) participation in the Disciplinary Board Pilot Program on Alcohol Abuse; (4) making of regular reports by the State Bar Alcohol Abuse Consultant as to petitioner's compliance with conditions (1), (2) and (3); (5) compliance with provisions of the State Bar

Act and Rules of Professional Conduct; (6) taking and passing the Professional Responsibility Examination; (7) making of regular reports regarding the status of petitioner's client trust accounts; (8) independent certification of status of client trust accounts; and (9) answering all inquiries by the State Bar relating to probation except as to privileged matters.

Petitioner was born in 1928 and was admitted to practice in December 1974. He has no prior disciplinary record.

In a notice to show cause, petitioner was charged with violation of his oath and duties as an attorney (Bus. & Prof. Code, §§ 6063, 6078, 6068, 6103, and 6106), the commission of acts involving moral turpitude and dishonesty (Bus. & Prof. Code, § 6106) and wilful violation of rules 2-111, 6-101 and 8-101, Rules of Professional Conduct. (West's Ann. Bus. & Prof. Code, foll. § 6076.)

The board filed with this court an order approving a stipulation as to facts and recommended discipline. The stipulation constitutes both an admission of facts underlying the charges of misconduct, and a concurrence in the recommended discipline.[1] Petitioner sought review of the recommended discipline only after learning this court was considering the imposition of harsher sanctions than those recommended by the board—specifically a period of actual suspension. It is settled that when this court considers the imposition of more severe sanctions than those recommended, the petitioner is bound by facts set out in the stipulation, although he may be relieved from legal conclusions stated therein. (*Inniss* v. *State Bar* (1978) 20 Cal.3d 552, 555 [143 Cal.Rptr. 408, 573 P.2d 852].) Petitioner does not challenge findings of fact or legal conclusions to which he has stipulated, nor does he seek to place additional matters before the court. His purpose in seeking review is to urge that we adopt the recommended discipline.

The stipulation establishes five separate instances of professional misconduct occurring in 1977 and 1978.

---

[1]The document sets out comprehensive stipulations entered into between petitioner and the State Bar examiner pursuant to former rule 25.40, now rule 406, Rules of Procedure of the State Bar. (West's Ann. Bus. & Prof. Code, foll. § 6087.) The factual recitals may be regarded as admissions since petitioner specifically agreed to the statements in that document. (See *Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 261, fn. 5 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231].)

## The Severin Matter

Petitioner represented Tim Severin in dissolution proceedings. After dissolution was decreed, Severin retained petitioner to appeal certain aspects of the judgment, and forwarded to petitioner $1,000 as a legal fee. Thereafter petitioner failed to keep an appointment with Severin, failed to communicate with him, and failed to file notice of appeal. Severin informed petitioner that he intended to retain other counsel, and demanded petitioner return the $1,000 fee, surrender the case file and execute a substitution of attorney form. Severin was substituted in propria persona in place of petitioner and received the case file. However, petitioner refused to return any portion of the $1,000 fee, and Severin obtained a default judgment against petitioner for $1,000. A writ of execution was levied on petitioner's automobile and petitioner paid approximately $1,000 for a release.

## The Whitla Matter

Petitioner settled claims on behalf of William Whitla for $4,500. Petitioner's law partner drew a check on the firm's trust account for $2,250 payable to Whitla as his share of the settlement proceeds. The check was entrusted to petitioner for delivery to Whitla, but petitioner failed to forward the check. Instead, without Whitla's consent or authority, petitioner forged Whitla's endorsement, negotiated the check, and diverted the proceeds to his own use.

After Whitla contacted petitioner's law firm to inquire about the settlement, petitioner's law partners confronted petitioner with the fact Whitla had received nothing. Before he was contacted by the State Bar, petitioner sent Whitla checks totaling $3,000.

## The Jurevich Matter

Petitioner represented Ila Jurevich in matters involving a claim against the United States for her husband's death, and a claim against her by the United States regarding Social Security benefits. Petitioner failed to timely file a claim on Jurevich's behalf with respect to the death of her husband. Jurevich retained substitute counsel who requested petitioner to send the Jurevich file and other documents relating to these matters. Petitioner refused to do so.

Jurevich commenced a malpractice action against petitioner for his failure to file the death claim. Petitioner forwarded the file on this matter to his malpractice insurance carrier.

Petitioner's failure to forward the Social Security file to substitute counsel prejudiced Jurevich's rights because such counsel was unable to pursue that matter.

### THE POPE MATTER

Petitioner settled a personal injury claim for Angela Pope for $3,500 and received a draft in that amount, payable to Pope. An employee of petitioner obtained Pope's endorsement on the draft and returned it to petitioner. Petitioner negotiated the settlement draft and misappropriated the proceeds for his own benefit.

While this proceeding was pending before the board, petitioner sent Pope $3,500, and agreed to hold her harmless from medical liens in connection with injuries received by her in the accident on which her personal injury claim was based.

### THE MACIAS MATTER

Marcelino Macias retained petitioner's law firm to represent him in postmarital dissolution proceedings, and paid $2,000 as advance fees to the law firm. Petitioner performed certain services for Macias, but before he had earned the entire $2,000 for his services, petitioner withdrew without giving notice to Macias and without taking reasonable steps to avoid prejudice to Macias' rights. Petitioner "failed and refused to promptly return to" Macias the unearned portion of the $2,000 fee.[2] It is acknowledged that petitioner "wilfully collected an unconscionable fee" from Macias in view of legal services contemplated to be performed.

It appears from the foregoing that petitioner admits wilful misconduct consisting of (1) misappropriation of clients' funds, in two matters, in the aggregate amount of $5,750; (2) forgery of a client's signature on

---

[2]It is unclear from the stipulation whether petitioner ever returned the unearned portion of the $2,000 fee.

a settlement check; (3) failure to perform services in three separate matters; (4) failure to promptly return unearned fees; (5) failure to forward files and documents to substitute counsel retained when petitioner failed to perform diligently; (6) collection of an unconscionable fee in light of the legal services contemplated to be performed; and (7) withdrawal from representation without taking reasonable steps to avoid foreseeable prejudice to the client's rights.

Petitioner's behavior unquestionably constitutes serious misconduct that could warrant disbarment or actual suspension for a substantial period of time. ■ Misappropriation of a client's funds is a serious breach of professional ethics which may endanger the confidence of the public in the legal profession (*Schultz v. State Bar* (1975) 15 Cal.3d 779, 803 [126 Cal.Rptr. 232, 543 P.2d 600]; *Bradpiece v. State Bar* (1974) 10 Cal.3d 742, 746 [111 Cal.Rptr. 905, 518 P.2d 337].) Disbarment is appropriate discipline in the absence of mitigating circumstances. (*Cain v. State Bar* (1979) 25 Cal.3d 956, 961 [160 Cal.Rptr. 362, 603 P.2d 464]; *Weir v. State Bar* (1979) 23 Cal.3d 564, 576 [152 Cal.Rptr. 921, 591 P.2d 19].) ■ Petitioner has additionally committed acts of forgery, has improperly obtained unearned fees and has collected unconscionable fees. ■ Even the wilful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his clients. (*Lester v. State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841]; *Selznick v. State Bar* (1976) 16 Cal.3d 704, 708-709 [129 Cal.Rptr. 108, 547 P.2d 1388]; *Taylor v. State Bar* (1974) 11 Cal.3d 424, 431, 435 [113 Cal.Rptr. 478, 521 P.2d 470].) ■ Additionally, petitioner has failed to forward files and documents to substitute counsel and has prejudiced his client by his unnoticed withdrawal. When an attorney's disregard of his clients' interests is "habitual" severe discipline has been imposed. (*Lester v. State Bar, supra*, 17 Cal.3d 547; *Ridley v. State Bar* (1972) 6 Cal.3d 551 [99 Cal.Rptr. 873, 493 P.2d 105].)

The board's recommendation, although for five years' probation upon numerous conditions of probation, does not provide for actual suspension. In making that recommendation, it must be apparent the board considered and weighed heavily mitigating factors that petitioner was an alcoholic when the misconduct occurred; that petitioner stopped drinking intoxicants in February 1979 and has since associated himself with an attorney who is active in the State Bar's alcohol abuse program; that as to the Whitla matter, petitioner had been a long time friend of

his client and, based upon their prior relationship and conversations, petitioner believed he had Whitla's implied authority to sign Whitla's name to the check; and that petitioner has no prior disciplinary record.[3]

■ Although we recognize alcoholism and subsequent rehabilitation as affording some explanation of a petitioner's conduct aiding in the assessment of his present character as bearing on the appropriate discipline, alcoholism does not excuse or exonerate serious misconduct. "Whatever the reason for an attorney's misconduct, our concern is and must be the protection of the public in the high duties of an attorney, the preservation of public confidence in the legal profession, and the maintenance of the highest professional standards for attorneys." (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 387 [90 Cal.Rptr. 420, 475 P.2d 652].)

■ We favorably note petitioner's acknowledgment of wrongdoing, his cooperation through disciplinary proceeding and his continued efforts and progress in rehabilitation.[4] However, restitution in the Whitla and Pope matters is entitled to little weight since it was made pursuant to confrontation by petitioner's law partners in the Whitla matter and under pressure of the State Bar in the Pope matter. (See *Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763].) In *Inniss* v. *State Bar, supra*, 20 Cal.3d 552, 557, we noted in similar situations that even "[w]here...mitigating circumstances are present, this court has tended to order actual suspension...."

Although we attach great weight to disciplinary recommendation of the board (see *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 878 [153 Cal.Rptr. 602, 591 P.2d 1254]; *Cain* v. *State Bar* (1979) 25 Cal.3d 956, 960 [160 Cal.Rptr. 362, 603 P.2d 464]), we have on numerous occasions imposed more severe penalties when we deemed it appropriate (*Cain* v. *State Bar, supra*, 25 Cal.3d 956; *Martin* v. *State Bar* (1978) 20 Cal.3d 717 [144 Cal.Rptr. 214, 575 P.2d 757]). In light of the seri-

---

[3]While petitioner has no prior disciplinary record, the misconduct instantly charged commenced less than three years after his admission to practice. Accordingly, his absence of a prior disciplinary record is expected and entitled to little weight as a mitigating factor. (See *In re Bloom* (1977) 19 Cal.3d 175, 179 [137 Cal.Rptr. 168, 561 P.2d 258]; *In re Hanley* (1975) 13 Cal.3d 448, 454 [119 Cal.Rptr. 5, 530 P.2d 1381].)

[4]Documents filed in this proceeding indicate that since the filing of the record in this case petitioner has continued to make progress in rehabilitating both his personal life and professional career, and has received strong recommendations from members of both the bench and bar.

ousness of petitioner's misconduct, we deem a six-month period of actual suspension is necessary and proper.

It is ordered that petitioner be suspended from the practice of law for a period of five years, that execution of this order be stayed and that petitioner be placed on probation for the five-year period on conditions that he be actually suspended from the practice of law for the first six months of such period of probation and that he comply with those additional conditions of probation set forth in the stipulation entered into with the State Bar Disciplinary Board.

It is further ordered that petitioner comply with California Rules of Court, rule 955. Performance of those acts required in subdivisions (a) and (c) of rule 955 are to be accomplished within 30 and 40 days, respectively, after the effective date of this order.

These orders are effective 30 days after the filing of this opinion.

**NEWMAN, J.,** Dissenting.—The majority opinion, I fear, may chill commendable efforts of the State Bar to foster settlement procedures.

A stipulation, even when comprehensive, is not designed to serve as "the record below." It rather reflects a bargain acceptable to both sides. Absent a record below, to increase penalties seems to me to be a risky business. (See dis. opn. of Bird, C. J. in *Giovanazzi v. State Bar* (1980) 28 Cal.3d 465, 479 [169 Cal.Rptr. 581, 619 P.2d 1005]: "[T]he economies made possible by the stipulation process could be lost if every attorney accused of misconduct felt impelled to insist on a formal evidentiary hearing on mitigating factors in anticipation of the prospect that this court might later decide to consider an increase in discipline.")

Bird, C. J., concurred.

Petitioner's application for a rehearing was denied February 11, 1981. Bird, C. J., was of the opinion that the application should be granted.