[L.A. No. 32217. Dec. 11, 1986.]

CHARLES HENRY MEPHAM, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Charles Henry Mepham, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Marilyn Alper for Respondent.

**OPINION**

**THE COURT.**—This is a proceeding to review the recommendation of the Review Department of the State Bar Court that petitioner Charles Henry Mepham be suspended from the practice of law for five years, that the order of suspension be stayed, and that he be placed on probation for five years on specified conditions including three years' actual suspension.[1]

---

[1]The recommended conditions of petitioner's probation include not only the three years' actual suspension, but also that he remain suspended until he has made restitution of $500 to the State Bar Client Security Fund (from which Mrs. Arroyo was reimbursed) and pay her interest at 10 percent per annum on the $500 he failed to return to her. He must also return all her files and documents. In addition, he must file quarterly reports with the State Bar Court, in which he shall certify that he has complied with all provisions of the State Bar Act and the Rules of Professional Conduct, that he is obtaining psychiatric or psychological help (until a licensed practitioner certifies that he no longer needs it), and that he has abstained from intoxicants and controlled substances. In addition, he is to participate in the State Bar's Pilot Program on Alcohol Abuse, and is to be assigned to a probation monitor referee for supervision. Further conditions of probation include maintaining a current address with the State Bar Court, and prompt answers to all inquiries from the State Bar regarding compliance with the terms of probation, and compliance with rule 955 of the California Rules of Court.

Petitioner was admitted to the practice of law in 1953. In 1977 he was privately reproved for failing to communicate with and abandoning a client and refusing to return unearned fees. In 1978 he was publicly reproved for similar conduct. In 1983 he was suspended from practice for three years, with execution of suspension stayed on certain conditions, after he failed to prepare an interlocutory divorce decree and failed to communicate with his client, who remarried. This discipline was also imposed because petitioner had failed to file a lawsuit within the period of the statute of limitations and failed to inform his client that the case had been dismissed.

The present disciplinary proceedings arise out of petitioner's representation of Maria Arroyo. The hearing panel of the State Bar Court found that she had retained him on July 15, 1981, to transfer title on her home to her name alone after the death of her husband. She paid the agreed fee of $500 in installments of $50, $250 and $200, paying the final installment on September 1, 1981. On July 15, 1981, petitioner asked Mrs. Arroyo and her daughter Nancy Arroyo to provide him with various documents, including a social security award. They provided them within a short period. Petitioner was aware that his client was under the impression that the transfer of title had to be accomplished within nine months to avoid certain inheritance taxes, and that the speedy transfer of title had become an obsession with her. After the initial meeting, all his communications were with Nancy Arroyo; he assured her that the matter would be taken care of quickly. Thereafter Nancy Arroyo made at least 27 telephone calls to petitioner to determine the progress of the matter, and petitioner failed to respond to any of them. As of January 17, 1982, he had not effected the transfer of title. On that day Nancy and Mrs. Arroyo effected the transfer themselves in four to five hours.

On March 22, 1982, Mrs. Arroyo filed for fee arbitration against petitioner with the Los Angeles County Bar Association, as he had not refunded the unearned fee. On July 26, 1982, the arbitrator held that petitioner had not performed the services for which he had been retained and awarded Mrs. Arroyo the sum of $500. The arbitrator also ordered petitioner to return the social security document in his possession. Petitioner had not paid the arbitration award as of the hearing on discipline on June 14, 1985.

Based on these facts, the hearing panel found that petitioner had failed to perform the services for which he was retained, failed to communicate with his client, withdrew from employment without taking steps to protect the interests of his client, failed to return documents the client had given him, and failed to refund unearned fees to the client. It found that petitioner had committed acts involving moral turpitude and dishonesty in abandoning

his client and in making misrepresentations to her daughter, and that he had violated his oath of office as an attorney.[2]

At petitioner's request, the hearing was continued so that he could present evidence in mitigation. He failed to appear at the later hearing, and the hearing panel recommended the discipline noted above. The review department set the matter for hearing, notifying petitioner that it was considering recommending that he be disbarred. After the hearing, at which petitioner did appear, the review department adopted the factual findings of the hearing panel, and by an eight-to-five vote, also adopted the hearing panel's recommendation that petitioner be suspended on enumerated conditions. The five dissenters noted that they would disbar petitioner "in view of his long pattern of professional misconduct and the lack of evidence showing that he is able and fit to practice law."

Petitioner does not dispute any of the findings of the State Bar Court, nor any element of the discipline imposed except for the three years' actual suspension. He maintains that the three years' suspension is excessive, in view of certain circumstances in mitigation. He tells us that the misconduct in this case was an extension of the problem with alcoholism which also caused his previous misconduct. He says that in 1974 he lost control of his family, business and personal life. In March 1980, he entered the hospital for treatment for alcoholism. As he testified before the hearing panel in this case, after he completed a month's treatment at the hospital, he had hoped to resume his practice, but found that he could not work for more than a few hours a day without experiencing great anxiety. Accordingly, he was unable to fulfill his obligations to his clients. He explains that he is 57 years old, that a 3-year suspension will be a disaster for him, and that he has modified his practice to avoid personal injury and workers' compensation cases "which had caused petitioner to be mired down in cases of many years of waiting time." He also explains that he attends Alcoholics Anonymous meetings four to five times per week and sponsors other alcoholics in that organization. Petitioner suggests in light of these circumstances that no actual suspension is warranted, and that instead he be ordered to perform pro bono services for a legal aid society two or three days a week.

Though we have the final authority in selecting the appropriate discipline to impose on attorneys guilty of misconduct, we do give great

---

[2]The hearing panel found that these acts of misconduct constituted violations of rules 6-101 and 2-111 of the Rules of Professional Conduct of the State Bar of California and that the acts involved moral turpitude within the meaning of section 6106 of the Business and Professions Code and a violation of petitioner's oath as an attorney under section 6103 of the Business and Professions Code.

weight to the State Bar's recommendation. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 456 [224 Cal.Rptr. 101, 714 P.2d 1239]; *Alberton* v. *State Bar* (1984) 37 Cal.3d 1, 14 [206 Cal.Rptr. 373, 686 P.2d 1177].) The State Bar had before it petitioner's testimony about his alcoholism and his explanation that the misconduct here occurred because even after treatment, he remained unable to maintain a full-time practice. The State Bar also had before it petitioner's testimony about his continuing participation in Alcoholics Anonymous and his success in remaining sober. We think that the State Bar legitimately discounted these circumstances in mitigation.[3]

Of course, "we are not insensitive to the personal and professional problems that frequently beseige the practitioner, including the all too frequent devastating impact of alcohol abuse. Nor have we been unmindful of the frequent successes of personal effort, restoration and human rehabilitation." (*Tenner* v. *State Bar* (1980) 28 Cal.3d 202, 207 [168 Cal.Rptr. 333, 617 P.2d 486].) On the other hand, our primary concern is the protection of the public, the preservation of confidence in the legal profession, and the maintenance of high professional standards. (*Franklin* v. *State Bar* (1986) 41 Cal.3d 700, 709 [224 Cal.Rptr. 738, 715 P.2d 699].) We cannot allow alcoholism to excuse serious misconduct. (*Finch* v. *State Bar* (1981) 28 Cal.3d 659, 666 [170 Cal.Rptr. 629, 621 P.2d 253].) To do so would be compassionate, but would not carry out our duty to the public and to the profession.

Furthermore, petitioner's claim is not that the breach of his obligations to Mrs. Arroyo occurred during a bout with drink, but that it occurred after hospitalization for alcoholism which succeeded in restoring petitioner to sobriety. We recognize that the struggle with alcoholism is an ongoing one, but if the struggle incapacitates the practitioner indefinitely, then the public is entitled to some protection from him. Here, petitioner was hospitalized in March 1980. He returned to practice in May 1980, supported by almost daily Alcoholics Anonymous meetings. The unfortunate Mrs. Arroyo retained him on July 15, 1981, more than a year after his discharge from the hospital. Petitioner had done nothing for her as of January 1982. He refused to return the unearned fee even after an arbitration award in July 1981. If it was the struggle with alcoholism which caused this failure to perform,

---

[3]The State Bar did not have before it petitioner's claim that he has modified his practice to avoid personal injury and workers' compensation cases, which apparently caused him problems. We do not think that this claim is of very great significance, since Mrs. Arroyo's case was of neither variety, and because of some inconsistencies in petitioner's claims about his practice that we discuss below. In any case petitioner had a duty to present any mitigating evidence at the State Bar proceedings. He may not ask us to rely on this evidence after neglecting to present it before the State Bar. (*Martin* v. *State Bar* (1978) 20 Cal.3d 717, 722-723 [144 Cal.Rptr. 214, 575 P.2d 757].)

we see no pattern of recovery which gives us any confidence in petitioner's representation of future clients.

■ An attorney's attitude toward the disciplinary procedure is a matter to consider in selecting an appropriate discipline. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 749 [111 Cal.Rptr. 905, 518 P.2d 337].) Apart from the attitude disclosed by petitioner's failure to appear at the hearing on mitigation which he requested, we note some inconsistencies in his testimony before the State Bar. He testified before the hearing panel in this matter and confirmed at oral argument that he was unable to work more than three hours a day for about a year after he was discharged from the hospital, and that this caused him to get far behind in his work. However, the record contains his testimony from his last disciplinary hearing on March 10, 1981. There he was charged with serious misconduct toward clients in 1978; he admitted this but explained that since his hospitalization in 1980 he had regained control of himself and his practice. He said that he had a good calendaring system that meant that cases got action at least once a month. Of particular note is his testimony: "I get to the office at 7:00 a.m. each morning and I usually work until about 7:00 at night, and then I go to meetings, and it's been a very good program. . . ." Petitioner gave this testimony, in March 1981, several months before Mrs. Arroyo retained him. At oral argument in this matter he had no recollection of making the statement and suggested that his 12-hour working days had ended with his hospitalization. ■ It is, of course, a serious breach of an attorney's oath to lie to any judicial officer, including officers of the State Bar Court. (*Olguin* v. *State Bar* (1980) 28 Cal.3d 195, 200 [167 Cal.Rptr. 876, 616 P.2d 858]; *Worth* v. *State Bar* (1978) 22 Cal.3d 707, 711 [150 Cal.Rptr. 273, 586 P.2d 588].)

■ Petitioner has a substantial record of discipline which weighs heavily against him. (See *Davis* v. *State Bar* (1983) 33 Cal.3d 231, 241 [188 Cal.Rptr. 441, 655 P.2d 1276].) The misconduct here occurred during disciplinary proceedings in another matter, when we might expect an attorney to be particularly scrupulous. Moreover, at the time of the hearings in this matter, petitioner was under probation supervision in the prior matter, and had failed to file the required quarterly report.

■ It is serious misconduct to willfully fail to perform the services for which the attorney is retained (*Lester* v. *State Bar* (1976) 17 Cal.3d 547, 551 [131 Cal.Rptr. 225, 551 P.2d 841]) as it is to willfully fail to communicate with the client (*Spindell* v. *State Bar* (1975) 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168, 80 A.L.R.3d 1231]) and to fail to refund unearned fees (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937]; *Schullman* v. *State Bar* (1973) 10 Cal.3d 526, 535 [111

Cal.Rptr. 161, 516 P.2d 865].) ██ And habitual disregard of clients' interests, which we certainly detect here, warrants severe discipline. (*Finch* v. *State Bar, supra,* 28 Cal.3d 659, 665; *Lester* v. *State Bar, supra,* 17 Cal.3d 547, 551.)

Accordingly, petitioner is suspended from the practice of law for five years. Execution of the order of suspension is stayed, and petitioner is placed on probation for five years with conditions of probation to include actual suspension of three years, and until he has made restitution of $500 to the State Bar Client Security Fund. Petitioner is ordered to comply with the other conditions of probation set forth in the review department's order. Petitioner is ordered to comply with rule 955 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of this opinion.