[No. S010287. Apr. 5, 1990.]

In re CHRISTOPHER R. HICKEY on Suspension.

**COUNSEL**

Theodore A. Cohen for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi, Ellen R. Peck and Patsy J. Cobb for Respondent.

**OPINION**

**THE COURT.**—We review the recommendation of the Review Department of the State Bar Court (the review department) that petitioner Christopher R. Hickey be suspended from the practice of law for a period of three years, that the order of suspension be stayed, and that he be placed on probation for three years subject to certain conditions. The conditions of

probation include an actual suspension of 30 days. After considering the record and the arguments of petitioner and the State Bar, we adopt the review department's recommendation.

## FACTS

Christopher R. Hickey was admitted to the State Bar of California on November 29, 1978. He has not previously been the subject of discipline.

At the evidentiary hearing before a one-member hearing panel (the hearing panel), the State Bar examiner and petitioner's then counsel stipulated to the facts and circumstances surrounding petitioner's plea of nolo contendere to a violation of Penal Code section 12025, subdivision (b), carrying a concealed weapon, and to facts arising from the disciplinary investigation of petitioner's alleged failure to withdraw in accordance with former rule 2-111, Rules of Professional Conduct (new Rules of Professional Conduct became operative May 27, 1989; all further references are to the former rules), in the Kuparinen matter. We summarize the stipulated facts.

### 1. *The Criminal Proceedings Against Petitioner*

One evening in May 1987, while at a nightclub in Palm Springs, petitioner struck his wife on the side of her head with a gun. By the time the police arrived on the scene, petitioner and his wife had left the nightclub.

After the incident, petitioner's wife took refuge with a neighbor, Clark Garen. Petitioner approached the door of Garen's house and threatened his wife. Both Garen and petitioner's wife heard a sound outside the house that sounded like a gunshot.

In the very early hours of the following morning, petitioner's wife telephoned the police from her home on the "9-1-1" number reporting a disturbance without other detail. The police arrived in response to the "9-1-1" call, but departed after petitioner's wife insisted that she had not been harmed and that they leave.

Later that morning, the police were again called to the residence because of petitioner's conduct. The police observed petitioner emerge from his property carrying a handgun which protruded about two inches from the top of his waistband, and arrested him. Petitioner's wife requested that the police officers take a second handgun belonging to petitioner into their possession for safekeeping, since she feared for her life.

As a result of this incident, petitioner was charged with violating Penal Code sections 12031, subdivision (a) (carrying a loaded weapon), 12025, subdivision (b) (carrying a concealed weapon), and 647, subdivision (f) (public drunkenness). In December 1987, petitioner pled nolo contendere to violating Penal Code section 12025, subdivision (b); the other charges were dismissed. Petitioner was sentenced to three years' formal probation, including, inter alia, attendance at alcohol rehabilitation program.

Petitioner had also been arrested, in an earlier incident, on April 13, 1987. Although there was no disciplinary referral regarding the April 13 incident and arrest, the following evidence of petitioner's conduct was before the hearing panel by stipulation as a circumstance surrounding his conviction.

In April 1987, petitioner and his wife were drinking with friends in Palm Springs at the Tahquitz Lounge. While she was dancing with another man, petitioner approached her and slapped her across the face. Her nose began to bleed. Petitioner and his wife then left the lounge and she tried to retrieve her car keys from him.

Bystanders witnessed petitioner chasing his wife and beating her. The eyewitnesses reported this to the Palm Springs police who were dispatched to investigate.

Before police arrived, one bystander, Carroll Hale, witnessed petitioner swing a fist at his wife and when he missed, push her. Hale insisted that petitioner stop assaulting the woman. Petitioner responded with a vulgar verbal attack upon Hale. Petitioner then ripped a metal sign from the ground and swung it at Hale, narrowly missing him. Petitioner swung the sign a second time at Hale's head. Hale raised his arm to block the assault and sustained a cut and bruise on his hand.[1] Petitioner then abandoned the attack upon Hale. While he was being arrested, petitioner threatened to get a gun and shoot Hale and the bystanders.

Petitioner's wife had a bloody nose, blood on her dress, and no shoes on her feet. She informed one of the arresting officers that "this sort of thing happened all of the time," and that she was afraid of petitioner, especially

---

[1] Photographs demonstrated that the sign was approximately four feet tall and made of lightweight sheet metal. One police officer was of the opinion that the sign was a very dangerous weapon because of its sharp metal edges that could easily inflict serious bodily injury. He further suggested that Mr. Hale escaped injury due to his physical ability to block petitioner's attempts to strike him with the sign.

"when he gets out of jail." She further stated that she did not wish to press charges because the long-term result would be "worse" for her.

Petitioner was charged with misdemeanor violations of Penal Code sections 245, subdivision (a)(1) (assault with a deadly weapon) and 273.5 (spouse abuse). In December 1987, the criminal proceedings against petitioner were suspended pursuant to Penal Code section 1000.6, for the purpose of granting diversion, and petitioner was referred to the Anger Awareness Program.[2]

2. *The Kuparinen Matter*

Evidence of the Kuparinen matter was before the hearing panel by stipulation. Though petitioner's conduct in that matter constitutes a violation of former rule 2-111, Rules of Professional Conduct, that violation has little weight in our decision here.

In July 1982, petitioner was hired by Mary Kuparinen to bring a medical malpractice action against Dr. James Manion and the Eisenhower Medical Center for an alleged personal injury.

In April 1983, petitioner filed a complaint on behalf of Mrs. Kuparinen and served the summons and complaint upon both defendants. Only one of the two defendants answered. Petitioner apparently never filed a proof of service of a summons and complaint, and did not move to take the default of the defendant who failed to answer.

During the course of discovery, petitioner became concerned that Mrs. Kuparinen was lying about the accident which had brought her to the hospital. In late 1984, petitioner contacted Mrs. Kuparinen and indicated that he did not want to represent her further because he did not believe in the merit of her claim. Mrs. Kuparinen apparently did not understand that petitioner was terminating the attorney-client relationship, and petitioner failed to follow up the conversation with a letter or a form for the substitution of attorneys.

In September 1987, Mrs. Kuparinen attempted to contact petitioner by telephone to request her case file. When petitioner failed to return her call,

---

[2] In June 1988, petitioner completed the Anger Awareness Program, as directed under section 1000.6 of the Penal Code. The program required approximately 13 classroom hours and testing to evaluate petitioner's level of self-esteem. The goal of the program was to provide petitioner with the necessary tools and understanding of violence control to lower his risk for future violent outbursts.

Mrs. Kuparinen contacted the State Bar and complained that she could not obtain her file from petitioner.

In October 1987, after the State Bar contacted petitioner, Mrs. Kuparinen went to petitioner's office and retrieved her file. At that time she signed a substitution of attorney form. Petitioner advised Mrs. Kuparinen as to when the five-year statute of limitations for failure to bring her cause of action would expire, and that she should seek other legal advice if she cared to pursue the matter. Thereafter, petitioner filed a "Request to Enter the Default of Dr. James Manion" and the proof of service of summons and complaint as to that defendant. Petitioner also filed the substitution of attorney form, replacing himself with Mrs. Kuparinen, in propria persona.

In December 1987, Mrs. Kuparinen's action was dismissed as to Dr. Manion due to her failure to file a proof of service of the summons and complaint within three years. In April 1988, the action was dismissed as to Eisenhower Medical Center for failure to bring the lawsuit to trial within five years.

### 3. Disciplinary Proceedings

The hearing panel filed its decision and concluded that the facts and circumstances surrounding petitioner's plea of nolo contendere to violating Penal Code section 12025, subdivision (b) did not constitute moral turpitude but did constitute misconduct warranting discipline. The hearing panel further determined that the facts in the Kuparinen matter did not demonstrate that petitioner wilfully violated former rule 2-111, Rules of Professional Conduct. After weighing the factors presented in mitigation, the hearing panel recommended that petitioner receive a private reproval and be placed upon probation for three years subject to certain terms of probation.

The review department (in a 12-to-3 vote)[3] adopted the findings of fact of the hearing panel, with modifications. The review department substituted its own conclusion that in the Kuparinen matter petitioner wilfully violated former rule 2-111, Rules of Professional Conduct.

The review department (also in a twelve-to-three vote) recommended that petitioner be suspended from the practice of law in the State of California

---

[3] The three voters dissenting did so on the ground that the degree of discipline is excessive. One of the three members additionally noted that no actual suspension appears warranted in this matter.

for three years; that suspension be stayed; that petitioner be placed on probation upon certain terms for a period of three years, including that he be suspended from the practice of law for the first thirty days; and that he thereafter take and pass the Professional Responsibility Examination. The majority of the review department advised this court that its reason for recommending greater discipline than recommended by the hearing panel is as follows: "[T]he review department believes that a shortened [sic] period of actual suspension is warranted by the nature of [Hickey's] offenses including his failure to recognize the seriousness of his acts of violence for which he was convicted and a period of probationary supervision is warranted based on [Hickey's] problem of alcohol abuse."

## DISCUSSION

The primary purposes of sanctions imposed for professional misconduct are the protection of the public, the courts, and the legal profession; the maintenance of high professional standards by its members; and the preservation of public trust in the legal profession. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.3; see also *Mepham v. State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728 P.2d 222].) ■ Although we attach significant weight to the discipline recommended by the State Bar Court, we ultimately make an independent determination as to the appropriate degree of discipline. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139].) There is no fixed formula in deciding the appropriate discipline. (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) Rather, this court must balance all the relevant factors. (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798 [239 Cal.Rptr. 111, 739 P.2d 1279].) After reviewing the record, we conclude that Hickey's conduct warrants the three-year suspension with thirty days' actual suspension recommended by the State Bar Court.

### 1. *Petitioner's Criminal Acts*

■ Petitioner argues that his conviction under Penal Code section 12025 does not involve misconduct warranting discipline because the misconduct has no nexus to the practice of law, the misconduct was the result of petitioner's alcoholism from which he has now recovered, and the misconduct was related to marital difficulties which have now been resolved. These contentions lack merit.

In *In re Otto* (1989) 48 Cal.3d 970, 971-972 [258 Cal.Rptr. 383, 772 P.2d 558], we recently concluded that the facts and circumstances of an

attorney's conviction of Penal Code sections 245, subdivision (a) (assault by means likely to produce great bodily injury), and 273.5 (infliction of corporal punishment on a cohabitant of the opposite sex resulting in a traumatic condition), constituted misconduct warranting discipline.

The facts and circumstances surrounding petitioner's plea of nolo contendre are similar in nature to those in *In re Otto, supra*, 48 Cal.3d 970. Here, the record demonstrates that petitioner repeatedly engaged in acts of physical violence toward his wife and toward others. Further, the record clearly indicates that petitioner's violent conduct arose from his repeated abuse of alcohol.

Although the incidents in question did not arise out of petitioner's legal activities and the violence was not directed at his clients or his clients' legal adversaries, those facts do not preclude the State Bar from taking appropriate disciplinary action to prevent petitioner's uncontrolled consumption of liquor from affecting his practice of law. When, as here, the State Bar finds that an attorney's alcoholism has led him to engage in violent criminal conduct, the State Bar need not wait until the attorney injures a client or neglects his legal duties before it may impose discipline to ensure the protection of the public. While evidence that the attorney has taken steps to deal with his alcohol problem is mitigating evidence that may properly be taken into account in determining the degree and nature of the discipline that should be imposed, such evidence does not eliminate the initial misconduct as an appropriate basis for discipline.

### 2. *Petitioner's Violation of the Rules of Professional Conduct*

█ Petitioner contends that his actions in the Kuparinen matter did not constitute a wilful violation of former rule 2-111, Rules of Professional Conduct (hereafter former rule 2-111).[4] Petitioner relies upon the decision of this court in *Kirsch v. Duryea* (1978) 21 Cal.3d 303 [146 Cal.Rptr. 218, 578 P.2d 935, 6 A.L.R.4th 334].

In *Kirsch,* a legal malpractice action against an attorney, judgment was entered for plaintiff upon a jury verdict. We reversed, holding that when an

---

[4]Former rule 2-111(B)(2) provided: "(B) A member of the State Bar representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a member of the State Bar representing a client in other matters shall withdraw from employment, if:

"... . . . . . . . . . . . . . . . .

"(2) He knows or should know that his continued employment will result in violation of these rules of professional conduct or of the State Bar Act."

Former rule 2-111(A)(1) provided: "If permission for withdrawal from employment is required by the rules of a tribunal, a member of the State Bar shall not withdraw from employment in a proceeding before that tribunal without its permission."

apparent conflict exists between an attorney's duty to his client and his public obligation, he will not be held liable in damages for choosing to honor the latter unless that choice is shown to have been so manifestly erroneous that no prudent attorney would have made it. (21 Cal.3d at p. 309.) *Kirsch,* however, is inapposite because it is a civil legal malpractice case; *Kirsch* discusses whether damages should be awarded for failure to effectuate withdrawal at a time when former rule 2-111 was not in effect. (*Kirsch* v. *Duryea, supra,* 21 Cal.3d at pp. 309-311.)

Moreover, even assuming *Kirsch* to be relevant here, petitioner's conduct in attempting to withdraw from representation was not comparable to the conduct of the attorney in *Kirsch.* There, once the attorney determined that the malpractice matter for which he was retained lacked merit, he unambiguously advised his client in writing of his conclusion and clearly stated that he would proceed no further with the case. He also enclosed a substitution of attorneys form and urged his client to retain new counsel. Finally, he advised the client, also in writing, of the statute of limitation on the cause of action. (*Kirsch* v. *Duryea, supra,* 21 Cal.3d at pp. 307, 311.)

Petitioner did none of these things. He failed to advise Mrs. Kuparinen in writing of his belief that her medical malpractice case lacked merit. Though, pursuant to former rule 2-111(B)(2), he was required to withdraw from representation in order not to violate his professional obligation not to present a false claim, petitioner failed to comply with the provisions of former rule 2-111(A)(2), that required withdrawal notice. Petitioner did not advise Mrs. Kuparinen in writing that she should promptly consult independent counsel to protect any potential legal rights she might have. Petitioner failed to send her a signed substitution of attorneys form. He failed also to file a "Request to Enter Default of Dr. James Manion" until 1987, thereby prejudicing her cause of action. And, unlike the attorney in *Kirsch,* petitioner stipulated that Mrs. Kuparinen was unaware that petitioner was terminating the attorney-client relationship. She therefore had no notice that she needed to protect her rights because petitioner would no longer do so.

Despite that stipulation, petitioner now claims that at the time he reasonably believed that Mrs. Kuparinen understood that he was withdrawing because she did not attempt to contact him again until September 1987. Even assuming this to be true, it is an attorney's obligation to the client and the administration of justice to assume responsibility for effectuating consensual withdrawal, and for presenting such a withdrawal to the courts.

Petitioner's omissions may have lulled Mrs. Kuparinen into thinking that he was proceeding with her case. At the very least, it allowed the courts,

over a period of three years, to rely on his continued representation of Mrs. Kuparinen as counsel of record, and to continue to process the case as if it had merit. Petitioner had a duty to the courts and to his client to determine if Mrs. Kuparinen desired to effectuate consensual withdrawal and, if she did not, to promptly make a motion for withdrawal as provided in Code of Civil Procedure section 284.

Petitioner's inattention to his duties to Mrs. Kuparinen, even during his period of alleged recovery from alcoholism, constituted a violation of former rule 2-111.

### 3. *Appropriateness of the Recommended Discipline*

■ Petitioner contends that the recommended discipline is excessive, since he has recovered from the causes of his misconduct. At the time of the State Bar hearing, however, petitioner was still on probation arising out of his violation of Penal Code section 12025, subdivision (b). He has presented no evidence of rehabilitation in a nonsupervised environment. Petitioner's circumstances warrant some period of actual suspension coupled with a sustained period of supervised probation.

Petitioner argues that the recommended discipline constitutes a punitive approach to his conduct leading to his criminal conviction, which he blames on his uncontrolled consumption of liquor. He contends that, as a current member of Alcoholics Anonymous, he is recovered and rehabilitated. Petitioner's misconduct was serious. The circumstances surrounding his conviction demonstrate a pattern of violent conduct arising from his abuse of alcohol and resulting in injury not only to his wife but to a bystander as well. Balanced against that serious behavior is a relatively short period of recovery, during which petitioner has been subject to supervised probation arising from his criminal conviction. Regardless of petitioner's efforts to rehabilitate himself, there has not yet been a sufficient passage of time to determine that these efforts will endure.

Under the circumstances of this case, we agree with the review department that a short period of actual suspension and a longer period of probation is necessary to protect the public by providing the necessary assurance that petitioner's recovery is lasting and that he will not again endanger his clients.

### DISPOSITION

We order that Christopher R. Hickey be suspended from the practice of law in the State of California for a period of three years; that execution of

his suspension be stayed; and that he be placed on probation for three years upon all the conditions, including actual suspension for the first thirty days of the probationary period, that are set forth by the State Bar. We further order that Hickey take and pass the Professional Responsibility Examination within one year of the effective date of our order. (See *Segretti v. State Bar* (1976) 15 Cal.3d 878, 891 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)