[No. F058002. Fifth Dist. Aug. 5, 2010.]

SUSAN HENDERSON, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC CO., Defendant and Respondent.

216

## Counsel

Christine J. Levin for Plaintiff and Appellant.

Bradley & Bradley, Elizabeth L. Bradley, Elizabeth Franco Bradley; Kahn, Soares & Conway, Jan L. Kahn and Rissa A. Stuart for Defendant and Respondent.

## Opinion

**GOMES, J.**—Plaintiff Susan Henderson's counsel went "all in" on a bad bet. First, he waited until the eleventh hour to begin opposing a summary judgment motion he had known about for months. Next, he assigned the preparation of that opposition to a paralegal whom he failed to supervise. Finally, learning that the paralegal had left the state with the opposition on the last business day before it had to be filed without his having seen it, he hoped for a miracle instead of immediately going to court to request an extension of time. Because these are inexcusable mistakes, the trial court did not abuse its discretion in denying Henderson's request for discretionary relief under Code of Civil Procedure[1] section 473, subdivision (b) (hereafter section 473(b)), from entry of summary judgment in favor of Pacific Gas and Electric Co. (PG&E). We also agree, with the majority of courts who have decided the issue, that Henderson is not entitled to mandatory relief under section 473(b) because such relief is not available for summary judgments. Accordingly, we affirm the postjudgment order denying Henderson's motion to vacate the summary judgment.

## BACKGROUND

The underlying facts are irrelevant to the issues on appeal. In March 2007, Henderson filed a complaint against her former employer, PG&E, asserting causes of action for employment discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.) and breach of contract. The case was initially set for trial on May 12, 2008, but the trial date was continued to August 25, 2008.

On May 8, 2008, PG&E moved for summary judgment, offering evidence to negate various elements of Henderson's claims and establish a complete defense to the action. A hearing on the motion was set for July 22, 2008. On June 10, 2008, the trial court ordered PG&E to produce discovery Henderson had requested within 30 days. On June 20, 2008, Henderson filed an ex parte

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

application to continue the trial date and the hearing on the summary judgment motion so she could receive this discovery and conduct additional discovery based on the information provided. The court granted the application and continued the hearing on the summary judgment motion to September 22, 2008, and trial to the week of October 27, 2008. Pursuant to section 437c, subdivision (b), the opposition to the motion was due on September 8, 2008, 14 days before the September 22 hearing date.

On September 8, 2008, the only document Henderson filed was the declaration of her attorney, Rod McClelland, in which he stated that evidence would be presented at the hearing on the summary judgment motion to show a triable issue of material fact existed. One exhibit was attached to the declaration—the declaration of a former PG&E employee, which McClelland stated supported Henderson's gender discrimination claim. On September 9, Henderson filed two memoranda of points and authorities, two responses to PG&E's separate statement, and the declaration of McClelland's law clerk, and on September 12, she filed McClelland's declaration authenticating various documents attached to it.

On September 15, 2008, Henderson filed an ex parte application for an order compelling the depositions of individuals she claimed were the subject of the court's June 10, 2008 discovery order and continuing the hearing on the summary judgment motion pursuant to section 437c, subdivision (h). In a declaration attached to the application, McClelland stated that PG&E refused to produce for deposition seven individuals who were subject to the trial court's June 10, 2008 ruling. He also stated that he had entrusted preparation of the summary judgment opposition to his paralegal, who had just taken the California bar exam, because he was handling other matters related to his law practice. On Thursday, September 4, 2008, his paralegal, who was working on the opposition from home and had the majority of the case file with her, called him and told him the opposition documents would be in his office the following day. The next morning, however, he received a voice mail message from her while on his way to work, in which she stated she had made arrangements with an attorney service in Fresno to e-mail the opposition directly to the service, who would file and serve it on Monday, September 8. On September 8, he contacted the attorney service, who denied having spoken with his paralegal, and had his secretary call the superior court's clerk, who could not confirm any filings until the following morning. In an effort to protect his client, he filed his declaration and a copy of the witness declaration. The following morning, he confirmed that only two other opposition documents had been filed. On September 9 and 10, his office received e-mailed copies of some of the documents his paralegal prepared. Finally, he stated that he was throwing himself on the court's mercy relating to the late filing and service of the summary judgment opposition.

The following day, PG&E filed a written opposition to Henderson's application. On September 17, the court continued the ex parte hearing to the following Monday, September 22, with the application to be heard prior to the summary judgment motion. Although the court also gave Henderson permission to file a reply to PG&E's opposition, Henderson did not file one. Also on September 17, Henderson filed and served an entirely new set of documents constituting her opposition to the summary judgment motion.

At the September 22, 2008 hearing, the trial court denied Henderson's request for continuance under section 437c, subdivision (h), finding there was an insufficient factual basis to support the continuance, as the depositions Henderson sought to take had not even been noticed and no factual declaration was made as to what information she expected to obtain from them, and the request was untimely and not diligently made. The court further found that, assuming McClelland's declaration was filed under section 473, it did not support a finding of excusable neglect, and Henderson was not entitled to mandatory relief under section 473(b) because that provision does not apply to summary judgment motions. Accordingly, the court denied the application to continue the summary judgment motion.

The court then granted PG&E's motion to strike the late-filed opposition and concluded PG&E was entitled to summary judgment based on the evidence it had submitted in support of its motion. A written order granting summary judgment in PG&E's favor was filed on October 30, 2008. The court entered judgment against Henderson on November 14, 2008, and notice of entry of judgment was served on McClelland by mail on November 18, 2008. On December 2, 2008, Henderson filed a motion for a new trial. By order filed January 29, 2009, the trial court denied the motion.

On March 20, 2009, Henderson filed a motion under section 473(b) to vacate the summary judgment against her. In support of her motion, McClelland submitted a declaration in which he claimed (1) he did not begin preparing the opposition to the summary judgment motion immediately because he was involved in several other cases, including a mediation and preparation of an opposition to a summary judgment motion in another employment case; (2) when he began preparing the opposition in this case, he was served with a summary judgment motion in another case, with that opposition due one week before the opposition in this case; (3) when counsel in the other case refused to agree to continue the motion, he was "forced to focus" on that opposition and allowed his paralegal, with whom he had worked with for several years, and who was a certified law student, had prepared a summary judgment opposition before, and was familiar with Henderson's case, to prepare the opposition in this case; and (4) he gave his paralegal the task of preparing the opposition more than four weeks before the deadline to file it.

McClelland further explained that he had requested a continuance of the summary judgment motion in July 2008 because he had not yet received personnel records he had subpoenaed from PG&E on July 9 and 10, 2008. After the court granted his request and continued the hearing to September 22, 2008, on August 13, defense counsel requested that he not depose certain individuals whose personnel records were produced, as specific Bates stamped documents showed that their information was irrelevant to Henderson's claims. However, he had not received the documents and therefore requested defense counsel to provide them. By August 20, his office had received documents responsive to the July 9 and 10 subpoenas, and documents identified in the August 13 letter. He believed additional documents existed that had not been produced, and the seven individuals PG&E refused to produce for deposition, whose depositions were never taken, had information relevant to Henderson's claim of pretext, as they were male employees who were not terminated despite having committed severe misconduct.

McClelland stated that throughout the month before the opposition was due, his paralegal, who was leaving for an Alaskan cruise on Friday, September 5, 2008, assured him the preparation was going well and the opposition would be filed timely. On Thursday, September 4, she left his office early to work on completing the opposition at home, taking the majority of Henderson's file with her without his consent. Later that day, she called him and said the opposition would be in his office on Friday morning, September 5, for his review and filing the following Monday. On his way to work on September 5, he received a voice mail message the paralegal left on his cell phone at 7:00 a.m., stating that her computer crashed the night before, so she took the entire file with her on the cruise and made arrangements to have the documents e-mailed to an employee of an attorney service in Fresno, who would then file and serve the documents on September 8. On September 8, McClelland contacted the attorney service employee, who said he had never spoken with the paralegal. McClelland's secretary called the superior court clerk, who could not confirm the filing of any documents until the next morning. McClelland could not contact the paralegal because she was without cell phone access. In order to protect Henderson, McClelland filed his declaration, with a copy of one witness statement attached. McClelland stated it was not until September 9 that he confirmed that only two pleadings in opposition to the motion were filed, i.e., the opposition points and authorities and response to the separate statement. On September 9 and 10, his office received e-mailed copies of some, but not all, of the documents and exhibits the paralegal had prepared.

McClelland declared that the paralegal removed the entire file without his authorization and unilaterally decided to scan the opposition and all supporting documents and exhibits from a remote location out of state. The paralegal also employed another service provider in an attempt to have the opposition

filed on September 8. After the paralegal returned from vacation, she told McClelland that when she tried to retrieve the original documents from the service provider, she learned that only two of them had been e-mailed, and she then went to the magistrate's office in Canada, where she received permission to use their equipment to electronically serve the opposition, including exhibits, on defense counsel. In an effort to timely file a complete opposition, McClelland filed and served the ex parte application to compel depositions and continue the summary judgment motion on September 15, 2008, and also filed and served a complete opposition to the summary judgment motion.

McClelland stated the current motion was timely because it was filed within six months of the September 22 hearing, and he delayed in filing the motion because he hoped the court would grant the new trial motion and he needed time to reconstruct his calendar and the course of discovery in the case. He admitted making a mistake in entrusting the paralegal with preparation of the opposition, as he should have required her to provide him with drafts a week earlier.

Henderson requested that the summary judgment be set aside in accordance with section 473(b), based on McClelland's inadvertence, surprise or excusable neglect resulting from the action of a "former rogue employee." She argued the element of surprise was satisfied when the paralegal's computer crashed on September 4 and she took the case file with her on vacation, and McClelland committed excusable neglect when he relied on the paralegal to prepare the opposition in its entirety.

As pertinent here, PG&E opposed the motion to vacate on the grounds that (1) it was an improper request for reconsideration of Henderson's September 15, 2008 ex parte application for continuance of the summary judgment motion, (2) Henderson was not entitled to mandatory relief from the judgment pursuant to section 473(b), and (3) Henderson was not entitled to discretionary relief based on section 473(b). PG&E also filed objections to Henderson's evidence. PG&E's attorney explained in her declaration that PG&E had objected to the subpoenas Henderson had served in July, which sought the employment records of nonparty PG&E employees, because the subpoenas were procedurally defective. PG&E, however, agreed to informally respond to the subpoenas and had provided Henderson with all located documents by August 20, 2008. The parties had scheduled the depositions of three witnesses for mid-August 2008, but they were taken off calendar on August 13 at the request of PG&E's attorney. Henderson never noticed new depositions. On September 4, McClelland asked to depose seven individuals, some of whom were no longer employed by PG&E, but he did not notice the depositions or subpoena the former employees. PG&E's attorney further

explained that given Henderson's late filing of the summary judgment opposition, PG&E did not have time to substantively reply to it.

In a reply brief, Henderson stated McClelland did not file his September 8 declaration with the intent to declare a mistake and had never previously applied for relief pursuant to section 473. Henderson claimed McClelland had been diligent, as he tried to ensure relevant documents were received before renoticing the depositions previously set and noticing the remaining depositions, and stated she was entitled to discretionary relief under section 473 because McClelland made a mistake in not setting an earlier deadline for his paralegal to complete the opposition, the paralegal's computer crashed while preparing the opposition, and the paralegal had removed the entire file without his permission.

Following oral argument, the trial court took the matter under submission. On May 8, 2009, the court issued a written ruling denying the motion to set aside the October 30, 2008 order and November 18, 2008 judgment. The court found that all of the facts needed to support a motion for continuance of the summary judgment motion were known in sufficient time for McClelland to have timely filed a motion for continuance under section 437c, subdivision (h), and his failure to timely do so was not adequately explained or justified by excusable mistake or neglect. The court further found the failure caused undue prejudice to PG&E. Finally, the court found that an attorney affidavit of fault cannot be relied upon to obtain relief from a summary judgment purportedly caused by attorney error, citing *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1416 [71 Cal.Rptr.3d 65] (*Huh*), and *Ambrose v. Michelin North America, Inc.* (2005) 134 Cal.App.4th 1350, 1355 [37 Cal.Rptr.3d 1] (*Ambrose*).

This appeal followed. As we stated in our December 17, 2009 order denying PG&E's motion to dismiss the appeal, our review is limited to whether the trial court erroneously issued the May 8, 2009 order denying relief under section 473(b).

## DISCUSSION

Henderson contends the trial court abused its discretion when it denied her motion to vacate the order on the motion for summary judgment and resulting judgment under section 473(b). We conclude the trial court did not err in denying the motion.

■ Section 473(b) provides a means for relief from judgment entered as a result of mistake, inadvertence, surprise, or neglect. First, the section contains a discretionary provision: "The court may, upon any terms as may be

just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473(b).) A requirement for discretionary relief is that the application "be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted . . . ." (*Ibid.*)

Section 473(b) also contains a "mandatory" or "attorney affidavit" provision. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 608 [109 Cal.Rptr.2d 256] (*State Farm*).) It provides: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).) Under this provision, a party will be relieved if a default judgment or dismissal is the result of its attorney's mistake, inadvertence, surprise, or neglect, without regard to whether the neglect is excusable. (*J.A.T. Entertainment, Inc. v. Reed* (1998) 62 Cal.App.4th 1485, 1492 [73 Cal.Rptr.2d 365].)

As a preliminary matter, we note that in Henderson's moving papers on the motion below, she appeared to rely only on the discretionary relief provision. In her points and authorities, Henderson stated that the request to set aside the order and judgment was made in accordance with section 473(b) and arose out of her "*counsel's inadvertence, surprise* and/or *excusable neglect.*" Only after PG&E argued the mandatory provision did not apply to summary judgments did Henderson assert in her reply the motion should be granted because there was no trial on the merits. The trial court ultimately decided in its written ruling that the mandatory provision did not apply to summary judgments purportedly caused by attorney error. While Henderson noted in her opening brief on appeal that there is a split of authority on whether mandatory relief is available with respect to motions to set aside summary judgments, she did not assert that we should adopt one view over the other, and instead argued that her attorney's neglect was excusable. After PG&E pointed out in its respondent's brief Henderson's failure to address the trial court's ruling, in her reply brief Henderson argued we should find that mandatory relief is available here. Since PG&E and Henderson both briefed the application of mandatory relief in this court, and we have "discretion to consider a new issue on appeal where it involves a pure question of the application of law to undisputed facts" (see *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680], disapproved on another

ground in *Hossain v. Hossain* (2007) 157 Cal.App.4th 454, 458 [69 Cal.Rptr.3d 356] [considering application of mandatory relief provision although appellant argued it "only obliquely below and not at all in the opening brief on appeal"]), we will consider both mandatory and discretionary relief.

*Mandatory Relief Under Section 473(b)*

■ The mandatory relief provision of section 473(b) is a "narrow exception to the discretionary relief provision for default judgments and dismissals." (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 [121 Cal.Rptr.2d 187, 47 P.3d 1056] (*Zamora*).) Its purpose " 'was to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys.' " (*Ibid.*, original italics.) An application for mandatory relief must be filed within six months of entry of judgment and be in proper form, accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect. (*Huh, supra*, 158 Cal.App.4th at p. 1414.) The defaulting party "must submit sufficient admissible evidence that the default was actually caused by the attorney's error. [Citation.] 'If the prerequisites for the application of the mandatory relief provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief.' " (*Ibid.*)

The issue of whether the mandatory provision of section 473(b) applies to summary judgments is a task of statutory construction, subject to de novo review. (*Huh, supra*, 158 Cal.App.4th at p. 1418.) "By its express terms, the mandatory relief provision applies only to defaults, default judgments, and dismissals." (*Id.* at p. 1415.) Some courts, however, have construed the provision to reach other circumstances deemed to be procedural equivalents of defaults, default judgments, and dismissals. (See, e.g., *In re Marriage of Hock & Gordon-Hock* (2000) 80 Cal.App.4th 1438, 1443 [96 Cal.Rptr.2d 546] [relief granted in dissolution case where neither the party nor her attorney appeared for trial]; *Avila v. Chua* (1997) 57 Cal.App.4th 860 [67 Cal.Rptr.2d 373] (*Avila*) [summary judgment].) "The rationale of these cases is that, where there is no hearing on the merits, an attorney's neglect should not prevent the party from having his or her day in court." (*In re Marriage of Hock & Gordon-Hock, supra*, at p. 1443.) "Other courts have rejected that rationale, characterizing such decisions as 'understandable, yet ultimately misguided quests to salvage cases lost by inept attorneys,' which 'have applied the mandatory provision far beyond the limited confines the Legislature intended.' " (*Huh, supra*, 158 Cal.App.4th at p. 1415, quoting *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130, 148 [114 Cal.Rptr.2d 93] (*English*).)

Henderson urges us to follow those cases that have construed the mandatory provision to reach the summary judgment entered here, citing *Avila*.

Henderson argues that following *Avila* "serves the public policy of protecting the innocent client, imposing the burden on the responsible attorney, and avoiding more litigation in the f[or]m of malpractice suits." In *Avila*, the Court of Appeal concluded the mandatory provision required the trial court to vacate a summary judgment entered in the defendant's favor after the trial court denied the plaintiff's request for a continuance of the hearing, struck the plaintiff's opposition that was filed one week late due to a calendaring error, and granted summary judgment. (*Avila, supra,* 57 Cal.App.4th at pp. 864–865, 867.) In holding that section 473(b)'s mandatory relief provision applied to the summary judgment, the appellate court reasoned that there had been no litigation and adjudication on the merits, therefore the plaintiff "lost his day in court due solely to his lawyer's failure to timely act." (57 Cal.App.4th at p. 868.) The court found the case directly analogous to a default judgment, noting the purpose of the mandatory relief provision is to relieve innocent clients from the burden of their attorneys' mistakes and that the law strongly favors disposition of cases on their merits, with any doubts regarding application of section 473(b) resolved in the moving party's favor. (*Avila, supra,* 57 Cal.App.4th at p. 868.)

PG&E contends the cases holding that the mandatory provision of section 473(b) does not apply to summary judgments control here, citing *Huh, supra,* 158 Cal.App.4th 1406 and *English, supra,* 94 Cal.App.4th 130. In *English,* the plaintiff opposed a defense summary judgment motion based solely on a requested continuance to conduct discovery. (*English, supra,* 94 Cal.App.4th at pp. 133–134.) After denying the request, the trial court granted summary judgment. (*Id.* at p. 134.) The plaintiff sought relief under section 473(b)'s mandatory relief provision based on her attorney's declaration of fault for failing to oppose the summary judgment motion on the merits. (*English,* at p. 134.) After thoroughly reviewing the legislative history of the mandatory relief provision and the case law interpreting it, the Court of Appeal concluded the mandatory relief provision does not apply to summary judgments. (*Id.* at pp. 138–143.)

The court reasoned that "a summary judgment is neither a 'default,' nor a 'default judgment,' nor a 'dismissal.' " (*English, supra,* 94 Cal.App.4th at p. 143.) The court explained that a summary judgment is not a "default" within the meaning of section 473(b) because the statute refers only to "a 'default' entered by the clerk (or the court) when a defendant fails to answer a complaint, not to every 'omission' or 'failure' in the course of an action . . . ." (*English, supra,* 94 Cal.App.4th at p. 143, fn. omitted.) A summary judgment likewise is not a default judgment, which "is a judgment entered after the defendant has failed to answer the complaint and the defendant's default has been entered." (*Ibid.*) Finally, a summary judgment is not a dismissal, which is defined as " 'the withdrawal of an application for judicial relief by the party seeking such relief, or the removal of the application by a court.' "

(*Id.* at p. 144.) While the court acknowledged that the summary judgment statute allows a court to grant summary judgment if the opposing party fails to file a separate statement of disputed and undisputed material facts, it noted that even in that situation, "the court cannot grant the motion 'until it has considered all of the papers and determined no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Id.* at p. 149.) Thus, a defense summary judgment cannot be considered a dismissal because it "does not constitute a removal of the plaintiff's application for judicial relief, but rather an adjudication . . . based on the undisputed facts before the court." (*Ibid.*)

The *English* court disagreed with other courts' "expansive interpretation of the statute under which the dispositive test, largely detached from the language of the statute itself, is whether the ruling from which relief is sought was 'in the nature of a default' and whether the party seeking relief 'had her day in court.' " (*English, supra,* 94 Cal.App.4th at pp. 147–148.) *English* deferred to the express dictates of the mandatory provision, saying no "court is at liberty to substitute its judgment for that of the Legislature in determining how far the statute should reach, no matter what good intentions may urge such an action." (*Id.* at p. 148.)

The *English* decision has been followed in subsequent cases. In *Huh*, the court agreed with "the cogent analysis in *English*, which is faithful to legislative intent and consistent with established principles of statutory construction" and concluded that the mandatory provision in section 473(b) " 'applies only to relief sought in response to defaults, default judgments or dismissals,' " which does not include summary judgments. (*Huh, supra,* 158 Cal.App.4th at pp. 1417, 1418, italics omitted.) Similarly, in *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290 [33 Cal.Rptr.3d 639], the court found the reasoning in *English* persuasive, and further noted that the general rule that a client is chargeable with the negligence of his or her attorney effectively would be repealed if the mandatory relief provision was interpreted to apply to any situation in which an attorney's "default" led to an adverse judgment. (*Id.* at pp. 295–296.)

■ After considering the reasoning in *English* and its progeny and comparing it to the reasoning in *Avila*, we conclude *English*'s reasoning is more persuasive and true to the statutory language and legislative intent of section 473(b). We agree that the summary judgment entered here is neither a "default," a "default judgment," nor a "dismissal" within the meaning of section 473(b). Because the mandatory relief provision of section 473(b) does not include relief for mistakes an attorney makes in opposing, or not opposing, a summary judgment motion (or not timely requesting a continuance of a hearing on a summary judgment motion), we conclude the trial

court did not err when it concluded the mandatory relief provision did not apply here. That brings us to Henderson's alternative argument that discretionary relief should have been granted.

*Discretionary Relief Under Section 473(b)*

■ To be entitled to discretionary relief, Henderson must demonstrate that the inadvertence, mistake, surprise or neglect of counsel was " 'excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.' " (*Zamora, supra*, 28 Cal.4th at p. 258.) In determining whether the attorney's mistake or inadvertence was excusable, the court inquires whether a reasonably prudent person might have made the same mistake under the same or similar circumstances. (*Ibid.*) Thus, discretionary relief is available only from attorney error that is " 'fairly imputable to the client, i.e., mistakes anyone could have made.' [Citation.] 'Conduct falling below the professional standard of care, such as failure to timely object or to properly advance an argument, is not therefore excusable. To hold otherwise would be to eliminate the express statutory requirement of excusability and effectively eviscerate the concept of attorney malpractice.' " (*Ibid.*)

■ In contrast to the mandatory provision in section 473(b), "discretionary relief under the statute is not limited to defaults, default judgments, and dismissals . . . ." (*English, supra*, 94 Cal.App.4th at p. 149.) As our Supreme Court has observed, "The discretionary relief provision of section 473, subdivision (b) applies to *any* 'judgment, dismissal, order, or other proceeding.' " (*Zamora, supra*, 28 Cal.4th at p. 254.) Thus, for example, an attorney's failure to meet a procedural deadline is a proper subject of section 473 relief. (*Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1193 [106 Cal.Rptr.2d 726].) To qualify for discretionary relief under section 473(b), the party seeking relief must show (1) a proper ground for relief, and (2) "the party has raised that ground in a procedurally proper manner, within any applicable time limits." (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495 [52 Cal.Rptr.3d 862].) The party seeking relief under section 473 must be diligent, i.e., apply for relief within a reasonable time not to exceed six months after the judgment, dismissal, order, or proceeding was taken, and there must not be any prejudice to the opposing party if relief is granted. (*Zamora, supra*, 28 Cal.4th at p. 258.)

■ The terms mistake, inadvertence, surprise, and excusable neglect warranting relief under section 473(b) are defined as follows: "Mistake is not a ground for relief under section 473, subdivision (b), when 'the court finds that the "mistake" is simply the result of professional incompetence, general ignorance of the law, or unjustifiable negligence in discovering the law . . . .'

(8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 155, p. 749.) Further, '[t]he term "surprise," as used in section 473, refers to " 'some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which ordinary prudence could not have guarded against.' " [Citation.]' (*State Farm . . . , supra*, [90 Cal.App.4th] at p. 611.) Finally, as for inadvertence or neglect, '[t]o warrant relief under section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief.' " (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1206 [99 Cal.Rptr.3d 642].)

Generally speaking, the trial court's ruling on a discretionary motion for relief is reviewed for an abuse of discretion. (*Zamora, supra*, 28 Cal.4th at p. 257.) Since "the law strongly favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default." (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713] (*Elston*); see also *Zamora*, at p. 256.) For that reason, "a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits." (*Elston*, at p. 233.)

Here, judgment was entered against Henderson after the court denied her application for continuance to conduct additional discovery, struck her late-filed opposition, and granted summary judgment in PG&E's favor. Thus, Henderson undertook two actions to prevent the entry of summary judgment, i.e., she filed an opposition to the motion and requested a continuance, both of which were late. Henderson therefore could have sought to set aside the judgment subsequently entered by requesting relief from either (1) the late-filed opposition, or (2) the late-filed application for a continuance. On appeal, Henderson offers no explanation or argument with respect to her attorney's failure to timely file the application for continuance, which pursuant to section 437c, subdivision (h) must be made on or before the date the opposition to the summary judgment is due. As the trial court found in denying her motion to set aside the judgment pursuant to section 473(b), McClelland certainly knew before the date the opposition was due, September 8, 2008, that he wanted to take additional depositions, yet he failed to file a timely application for continuance. Although Henderson argues on appeal that her attorney diligently pursued discovery, she does not explain how his diligence translates into an excuse for not requesting a continuance within applicable time limits. Accordingly, we address only the failure to timely file the opposition to the summary judgment motion.

Henderson asserts the trial court erred in failing to set aside the order granting summary judgment and the ensuing judgment because the opposition

to the summary judgment motion was filed minimally late, the error was not attributable to her, and McClelland took responsibility for the error. She argues the elements of surprise and neglect were both present as follows: (1) McClelland was surprised when (a) the opposition was not ready for his review on the Friday before the deadline, (b) the entire file was removed from his office without his permission, and (c) his paralegal did not have the documents sent to the office from Seattle or Alaska; and (2) McClelland was neglectful when he entrusted preparation of the opposition to his paralegal and did not require the paralegal to provide drafts of the documents earlier. Henderson asserts McClelland's conduct was excusable because relying on a paralegal is "the type of excusable error an attorney would make in trusting a law clerk who was months away from being a lawyer, who had never let him down before." She asserts this is the type of mistake a reasonable sole practitioner might make.

We find no merit in Henderson's arguments, as the trial court reasonably could have concluded that any surprise or neglect on McClelland's part was inexcusable. McClelland gave his employee, the paralegal, the task of preparing the opposition to the summary judgment motion. The responsibility for preparing the opposition, however, ultimately was his. (See, e.g., *Vaughn v. State Bar* (1972) 6 Cal.3d 847, 857–858 [100 Cal.Rptr. 713, 494 P.2d 1257] [although an attorney cannot be held responsible for every detail of office procedure, it is an attorney's responsibility to supervise the work of his or her staff members]; *Hu v. Fang* (2002) 104 Cal.App.4th 61, 64 [127 Cal.Rptr.2d 756] ["The attorney is the professional responsible for supervising the work of his or her legal assistants."]; see also *Spindell v. State Bar* (1975) 13 Cal.3d 253, 260 [118 Cal.Rptr. 480, 530 P.2d 168] ["An attorney has an obligation to adequately supervise his employees . . ."]; ABA Model Rules Prof. Conduct, rule 5.3, com. ["A lawyer must give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment . . . and should be responsible for their work product."].)

Thus, McClelland was responsible for supervising his paralegal's work and is responsible for her work product, including the failure to have the opposition filed on time. (Cf. *Zamora, supra,* 28 Cal.4th at p. 259 [assuming error of legal assistant attributable to counsel]; *Alderman v. Jacobs* (1954) 128 Cal.App.2d 273, 276 [274 P.2d 930] [assuming error of secretary attributable to counsel].) Given this, the trial court reasonably could conclude that his paralegal's inability to complete the assignment within the deadline he gave her, thereby resulting in the late filing of the opposition, did not constitute either surprise or excusable neglect, and instead was inexcusable, as he failed to supervise his employee closely and trusted in her scheme to file and serve the documents from a remote, out-of-state location, without ensuring his ability to review and sign them. Certainly McClelland knew by Friday

morning that he did not have the documents to review and his paralegal was planning to attempt to transmit them from Seattle or the cruise ship. Instead of immediately informing opposing counsel or the court of this problem and requesting either a continuance of the hearing or an extension of time to file the opposition, he gambled that the paralegal's plan would work and the documents would be filed on time. He gambled and lost.

Since it was McClelland's negligence in failing to supervise his employee and to request relief sooner that led to the late-filed opposition, the trial court reasonably could conclude that his conduct was inexcusable. While counsel might not have expected the paralegal's computer to crash, that she would take the client file with her on vacation, or that she would not have the documents filed while on her trip, ordinary prudence certainly could have guarded against these events. Moreover, under the reasonable person standard, McClelland's errors cannot be regarded as the type of errors a reasonably prudent person would make. Instead, the errors involved matters peculiar to the legal profession. A reasonably prudent person would not have expected a paralegal, even a trusted one, to prepare an opposition to a summary judgment on her own and then, upon learning that the opposition would not be available for review before filing, simply wait to see if in fact the opposition is filed. (See, e.g., *Ambrose, supra*, 134 Cal.App.4th at p. 1354 [in agreeing with trial court that failure to properly request the continuance of a summary judgment hearing caused by counsel's inadvertent failure to transfer a handwritten section of a brief into typewritten form did not constitute excusable neglect, appellate court stated "[a] reasonably prudent person just does not fail to include an essential request for continuance and an accompanying affidavit in an opposition to a summary judgment motion."].)[2]

For these reasons, we cannot say that the court abused its discretion when it concluded McClelland's conduct was inexcusable and did not merit relief under section 473(b).

---

[2] Henderson cites cases such as *Elston, supra*, 38 Cal.3d 227, in which our Supreme Court emphasized that the relief provisions of section 473 should be applied liberally, denial should be closely scrutinized on appeal, the policy of trial on the merits prevails unless inexcusable neglect is clear, and doubts should be resolved in the moving party's favor: "In such situations 'very slight evidence will be required to justify a court in setting aside the default.' " (*Elston*, at pp. 233–234.) Here, however, the evidence showed that the failure to timely file the opposition to the summary judgment motion was not excusable. As Henderson acknowledges, to prevail it was her burden to show her attorney's failure to timely file the opposition was the result of a mistake, inadvertence, surprise, or neglect that was excusable. Henderson simply failed to meet this burden. Henderson also contends the trial court's denial of the motion to set aside the judgment must be reversed because a court abuses its discretion when it imposes a terminating sanction for a mere violation of a procedural rule, citing *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1365, footnote 16 [63 Cal.Rptr.3d 483, 163 P.3d 160]. *Elkins*, however, did not involve the issue of whether a trial court abused its discretion in denying a motion for relief from judgment under section 473(b), and therefore is inapplicable here.

## DISPOSITION

The trial court's May 8, 2009 order is affirmed. Costs on appeal are awarded to PG&E.

Levy, Acting P. J., and Dawson, J., concurred.