Filed 10/11/23  First American Commercial Bancorp v. BB Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| FIRST AMERICAN COMMERCIAL BANCORP, INC., | B322842 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV06522) |
| v. | |
| BB CO., INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Law Offices of Jaenam Coe PC and Jaenam Coe for Defendant and Appellant.

Frandzel Robins Bloom & Csato and Andrew K. Alper for Plaintiff and Respondent.

_____

BB Co., Inc. appeals from the default judgment entered in favor of First American Commercial Bancorp, Inc. after the trial court denied BB's motion to set aside entry of default based on excusable neglect under Code of Civil Procedure section 473, subdivision (b).[1]  BB contends the trial court abused its discretion in denying relief because BB reasonably relied on a third party's direction to disregard the complaint and BB did not receive notice of First American's request for entry of default.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint and Entry of Default*
First American filed this action on February 18, 2021, asserting two causes of action for breach of lease agreements and a third cause of action for claim and delivery.  The verified complaint alleged BB entered into two leases with First American to lease printers, BB defaulted on both leases by failing to make the required payments, and First American was therefore entitled to take possession of the printers.

BB signed the first lease (lease 1) in March 2019, under which it leased four printers with monthly payments of $2,600 for 60 months.[2]  BB signed the second lease (lease 2) in October 2019 for three additional printers with monthly payments of $1,488, also for 60 months.[3]  The leases stated the lease payments were

---

[1]    All further undesignated statutory references are to the Code of Civil Procedure.

[2]    All dollar amounts are rounded.

[3]    First American attached as exhibits to the complaint executed copies of the leases, delivery and acceptance certificates,

2

"non-cancellable" and the leases could not be terminated.  BB was required to make payments "in advance of each month (or other payment period) during the Term."  However, it failed to make payments on both leases at the beginning of March, April, May, and June 2020.  BB and First American signed modifications to the leases on June 30, 2020, reducing the payments for nine months, then increasing the remaining payments to account for the missed payments.  Beginning on December 1, 2020, BB failed to make monthly payments under the modified leases.  For lease 1, the complaint sought $140,514 plus interest, $715 in late fees, and $19,800 for the residual value of the printers, plus attorneys' fees.  For lease 2, the complaint sought $89,493 plus interest, $398 in late fees, and $10,800 for the residual value of the printers.

On February 24, 2021 First American personally served BB with the summons and complaint by serving Karen Frazier (identified as BB's president) at 1753 East 21st Street in Los Angeles (21st Street address).  BB did not file an answer or other responsive pleading.  On April 12, 2021 First American filed a request for entry of default, and the clerk entered a default the same day.  The request for entry of default included a declaration of mailing attesting that on April 12 notice of First American's request for entry of default was mailed to BB at the 21st Street address.  The record does not contain proof of service of entry of the default on BB.  On July 6, 2021 First American served its case management statement on BB, addressed to Frazier at the

---

lease modifications, and financing statements.  The leases gave BB the right to purchase the equipment for fair market value at the expiration of the lease term.

same address.  The case management statement stated in two places that a default had been entered against BB.

B.      *First American's Request for Default Judgment and BB's Motion To Set Aside the Default*

On September 1, 2021 First American filed a request for a default judgment in the amount of $235,694.  The accompanying packet included a summary of the case, request for dismissal without prejudice as to Does 1 through 10,[4] and a supporting declaration from Chris Wuest, the senior vice president of asset management for First American.  The declaration of service stated the request was served on BB by mail addressed to Frazier[5] at the 21st Street address.

On October 5, 2021, at a hearing on an order to show cause regarding entry of default judgment, Lan Quoc Nguyen appeared as counsel for BB and informed the trial court that BB intended to move to set aside the default.  The court continued the hearing to December 3, 2012.  First American filed a second request for court judgment on October 6, again seeking a judgment for $235,694.

On October 12, 2021 BB filed a motion to set aside entry of default pursuant to the discretionary relief provisions of section 473, subdivision (b).  BB filed a supporting memorandum and declaration from Frazier, who identified herself as the chief

[4]      The clerk entered the dismissal of the Does on September 3, 2021.

[5]      Multiple documents were served on Kyoung K. Frazier at the 21st Street address.  Although most documents refer to Karen Frazier, Frazier does not dispute she was properly served as Kyoung Frazier.

4

executive officer of BB. BB attached to its motion a proposed answer and cross-complaint.

In her declaration Frazier described BB's leasing of the printers under the leases. She explained that James Langridge and his company Royal Office Solutions provided technical support and printer services for BB, which is a manufacturer of girls' clothing. Langridge introduced BB to First American, and BB agreed to lease the first four printers, but after a month, it requested the printers be returned and replaced with smaller, less expensive printers. Frazier claimed Langridge and Royal made arrangements for First American to take back the four printers, and BB entered into a second lease.[6] Frazier acknowledged that BB stopped making lease payments in December 2020.

According to Frazier, BB was served with the complaint in February 2021. Frazier averred that BB "was surprised at receiving said Complaint given that [First American] had previously agreed to take back all 7 of its printers." BB immediately contacted Langridge, "who informed [BB] to disregard [the complaint] and that they would speak to [First American]." Langridge assured Frazier "there was a misunderstanding and that it would be resolved and that [BB]

---

[6] Frazier stated the second lease was intended to replace the first lease, but the trial court sustained an evidentiary objection to the statement. The court also sustained objections to Frazier's statements that Langridge and Royal were working with First American to terminate the second lease and Langridge and Royal picked up the three remaining printers. BB does not contend on appeal the trial court erred in its evidentiary rulings. We therefore do not include in the factual summary statements by Frazier to which the court sustained evidentiary objections.

need not worry about it." BB heard "nothing about the Complaint subsequently and thought that the matter had been resolved." Then, on or about September 6, 2021 BB "received in the mail a Request for Court Judgment dated September 1, 2021." At this point BB sought legal advice and was informed that a default might have been entered against BB on April 12, 2021 in light of a docket entry that showed a request for entry of default filed on that date. Frazier further averred that BB had "never received any copy of the Request for Entry of Default that was filed on April 12, 2021 and was unaware that [First American] [had] sought and obtained a Default."

BB argued in its memorandum that it was entitled to relief based on its excusable neglect because Langridge and Royal told BB to disregard the complaint and that Langridge would resolve the misunderstanding about the printers with First American. Because BB did not receive notice of First American's request for entry of default, it was not on notice that a default had been entered until receiving a copy of the request for default judgment on September 6. Had BB received the request for entry of default, it would have moved to set aside the default at that time. BB also asserted public policy supported vacating the default in light of BB's meritorious defense that Langridge and Royal took advantage of BB by arranging leases for large, expensive printers that BB could not afford and did not need. Further, First American took back the printers but continued to charge BB.

On October 15, 2021 Frazier filed a supplemental declaration attaching what she described as "text messages" from Langridge to Frazier instructing Frazier not to respond to the complaint. The attachments appear to contain screen shots of words on a page with a date stamp but no other information. The first message has a 9:51 a.m. stamp and states, "I am working

6

[with] them so do not respond please."  A message at 10:12 a.m. states, "Just say it's being [handled] and [we'll] be in touch."  A 10:24 a.m. message states, "But if they call just ignore," and at 10:32 a.m., "Ok no action for now."  The last message, stamped 11:56 a.m., states, "Karen.  Spoken to Ken from collections.  We are good for now."  The messages do not show a sender, recipient, or date, nor do they have any indicia that the words are part of a text message.

On November 12, 2021 First American filed an opposition to the motion to set aside the default and evidentiary objections to Frazier's first declaration.  First American also submitted declarations from First American Assistant Vice President Jill VanDeWalle and First American's attorney, Andrew K. Alper, as well as two declarations from Wuest.  VanDeWalle attached to her declaration a May 8, 2020 email (just after BB's initial default) from Danielle Naylon, First American's portfolio officer who handled collections, to Frazier, stating Naylon had spoken with Langridge at Frazier's suggestion, and Langridge "claims no mention of [BB] being 'relieved of [its] payment obligations,' and he gave no indication that his company would make the lease payments on behalf of [BB]."  Naylon demanded payment from BB, or First American would escalate the matter to litigation.  Frazier and Wuest then exchanged emails discussing potential reduced lease payments.  On June 10, 2020 Wuest offered Frazier a proposal for BB to pay 25% of the amount past due as a condition of First American restructuring BB's future lease payments.  Frazier thanked Wuest and accepted, explaining BB's business had "shrunken," and it no longer needed the printers.

As discussed, on June 30, 2020 BB and First American negotiated modifications to the leases.  But starting on December 1, 2020, BB stopped making its lease payments under

the modified leases. VanDeWalle attached to her declaration multiple emails from VanDeWalle and others at First American to Frazier or Langridge. On December 14 a First American employee told Langridge that First American needed to talk directly to Frazier to address possible COVID-19 relief. On December 16 VanDeWalle followed up, advising Frazier and Cecy Mendoza (BB's controller) in an email that she had received information from Royal, but reiterating that First American "cannot assist with a possible solution unless you speak with us." Frazier responded by email later that day that BB did not have sufficient business to support having the printers, requesting First American pick up the "balance" of the printers, and stating Langridge would discuss the matter further with First American in BB's place. On December 29 VanDeWalle emailed Langridge with an offer for BB to cure its December default by paying approximately $5,300, to which Langridge responded that BB "could offer a minimal amount" toward the December payment "to keep the conversation channel open for now." The record does not reflect further email communications.

On January 26, 2021 Alper mailed a letter to BB, directed to Mendoza, advising the company that the leases were in default and demanding payment and return of the printers. The letter stated BB owed back payments of approximately $11,000, and if it did not make the payments within 10 days, First American would declare a default, and the full sum of $231,119 would be due under the leases. Further, if payment was not made and the printers were not returned, First American "[would] commence litigation and [BB] [would] be liable for attorney's fees and costs in any such litigation."

Alper declared BB did not respond to the demand letter, and First American filed the complaint on February 24, 2021,

8

with personal service on Frazier at BB.  On April 12 First American lodged a request for entry of default and mailed the request to BB at the 21st Street address.  No one from BB contacted Alper after receiving notice of the request for entry of default, and the request was not returned as undeliverable.  On July 6 First American mailed its case management statement to BB at the 21st Street address, which referenced the default in two places.  According to Alper, the case management statement was not returned as undeliverable.  BB first responded to the complaint on September 28, 2021, at which time Nguyen sent a letter on behalf of BB to Alper stating, "Perhaps we can engage in settlement discuss[ions] once the entry of default is set aside."  First American declined the offer.

First American argued in its opposition that BB had not shown excusable mistake or neglect because its reliance on statements by Langridge was not reasonable, especially given that Langridge was acting as BB's agent, not First American's.  Further, BB failed to respond to the April 12, 2021 request for entry of default and July 6, 2021 case management statement, which were served by mail on BB at the 21st Street address.  Yet Frazier falsely denied in her declaration that she had not received any documents in the action prior to receiving the default judgment packet on September 6, 2021.  In the alternative, First American argued that if the court were to set aside the default, First American should recover its attorneys' fees and costs incurred in opposing the motion pursuant to section 437b, subdivision (c).

In its reply, BB argued it reasonably relied on Langridge's representations given BB's long-term business relationship with him.  Further, First American's three declarants had no knowledge of Langridge's representations to BB.  BB also relied

9

on Frazier's statement in her declaration that she never received the request for entry of default and did not recall receiving First American's case management statement. BB again asserted public policy favored a trial on the merits.[7]

After a hearing on November 29, 2021, the trial court denied BB's motion.[8] The court sustained First American's objections to multiple paragraphs of Frazier's declaration based on hearsay and other grounds. The court found BB failed to show good cause to vacate the default, explaining, "[BB] represents that it did not timely respond to [BB's] complaint because it was relying on statements from Langridge and Royal that no response was required. However, [BB] submits no admissible evidence demonstrating . . . what statements Langridge and Royal allegedly made or that its mistake, surprise or neglect in relying on such statements was reasonable." Further, the court pointed to Frazier's December 2020 emails to First American directing the company to negotiate with Langridge about the missed payments, to which First American "reiterated it needed to speak with her." The court found Frazier's "reliance on Langridge to

---

[7] BB also argued First American's opposition was untimely because, although it was timely filed and served, it was received by BB just one day before BB's reply was due. The trial court rejected this argument, and BB does not raise it on appeal.

[8] The minute order for the hearing reflects that BB's attorney called the courtroom staff to state he had signed up for a telephonic appearance through "court connect" but was unable to connect and make a remote appearance. The record does not reflect whether BB's attorney called courtroom staff before or after the hearing. BB on appeal does not argue that proceeding with the hearing without BB's attorney being present was error. The record does not contain a transcript of the hearing.

10

negotiate for her eliminates any inference that relying on any statement from him was good cause not to respond to the complaint." The court found BB "was served with the Summons, Complaint and Request for Entry of Default at the same address." The court observed the filing of a proof of service of these documents created a rebuttable presumption that the service was proper, and "[t]hus, the court is not persuaded that [BB's] failure to respond to the Complaint was reasonable."

On February 25, 2022 the trial court entered a default judgment in favor of First American for $231,120, plus attorneys' fees and costs. BB timely appealed from the judgment.

## DISCUSSION

A.    *Governing Law and Standard of Review*

Section 473, subdivision (b), provides in relevant part, "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." To qualify for discretionary relief under section 473, subdivision (b), "the party seeking relief must show (1) a proper ground for relief, and (2) 'the party has raised that ground in a procedurally proper manner, within any applicable time limits.'" (*Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 229 (*Henderson*); accord, *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1419 (*Huh*).)

As the Court of Appeal in *Henderson* explained as to inadvertence or excusable neglect, "'[t]o warrant relief under

11

section 473 a litigant's neglect must have been such as might have been the act of a reasonably prudent person under the same circumstances. The inadvertence contemplated by the statute does not mean mere inadvertence in the abstract. If it is wholly inexcusable it does not justify relief.'" (*Henderson, supra*, 187 Cal.App.4th at p. 230; accord, *Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 929 (*Austin*) ["Within the context of section 473(b) neglect is excusable if a reasonably prudent person under similar circumstances might have made the same error."]; *County of Los Angeles v. Financial Casualty & Surety Inc.* (2015) 236 Cal.App.4th 37, 44 [bond surety demonstrated excusable neglect and surprise in failing to appear to argue its motion to vacate a bail bond forfeiture after a courtroom clerk misinformed its attorney on the morning of the hearing that the court had already granted the motion].) The trial court has discretion to grant relief under section 473, subdivision (b), "based on its evaluation of the nature of the mistake or error alleged and the justification proffered for the conduct that occurred." (*Austin*, at p. 928.)

"[R]elief is not warranted unless the moving party demonstrates diligence in seeking it." (*Huh, supra*, 158 Cal.App.4th at pp. 1420-1421 [affirming denial of discretionary relief under section 473, subdivision (b), where appellant waited more than three months after service of notice of entry of judgment to file his motion]; accord, *Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1145 ["Given the absence of evidence explaining the seven-week delay in seeking to set aside the dismissal, the diligence requirement was not satisfied."].) "While six months—the longest time allowable—represents the outside limit 'of the court's jurisdiction to grant relief in any event, the "reasonable time" test stands as an independent

12

consideration and in any given situation, its determination, within the maximum six-month period, "depends upon the circumstances of that particular case."'" (*Huh*, at p. 1422.) Whether a party has acted diligently is a question of fact for the trial court to be decided based on the circumstances of the particular case. (*Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 33; *Younessi*, at p. 1145.)

"'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of [an] abuse'" of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257; accord, *Austin, supra*, 244 Cal.App.4th at p. 929.) Under this standard, "we may reverse only if we conclude the trial court's decision is "'so irrational or arbitrary that no reasonable person could agree with it."'" (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1249 [affirming grant of equitable relief from default judgment].) "That a different decision could have been reached is not sufficient because we cannot substitute our discretion for that of the trial court. The trial court's ruling must be beyond the bounds of reason for us to reverse it." (*Mechling*, at p. 1249.)

Where the underlying facts are disputed, we review the trial court's factual findings under section 473, subdivision (b), for substantial evidence; where the facts are not in dispute, we review the trial court's determination whether the requirements for section 473, subdivision (b), have been met de novo. (*Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 348; *Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 437.) In assessing whether there is substantial evidence, we review the record in the light most favorable to the ruling, resolving all conflicts and drawing all reasonable inferences in favor of that

13

ruling. (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 415; *King v. State of California* (2015) 242 Cal.App.4th 265, 278-279.) We defer to the trial court's factual findings made in the exercise of its discretion in reviewing the court's ruling granting or denying discretionary relief under section 473, subdivision (b). (*Zamora v. Clayborn Contracting Group, Inc., supra*, 28 Cal.4th at p. 258 [""'where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed"'""]; *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 940 ["we defer to the trial court's resolution of any factual conflicts in the declarations"]; *Minick v. City of Petaluma, supra*, 3 Cal.App.5th at p. 24 [trial court's "factual findings in the exercise of [its] discretion are entitled to deference"].)

However, there is a public policy favoring trial on the merits. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 978, 984 (*Rappleyea*) [trial court abused its discretion in denying equitable relief from default judgment where defendants failed to pay entirety of filing fee for answer due to incorrect information from clerk's office]; *Fasuyi v. Permatex, Inc.* (2008) 167 Cal.App.4th 681, 694, 701-703 [trial court abused its discretion in denying motion under section 473, subdivision (b), for relief from default judgment entered after defendant's insurer failed to file answer].) Moreover, "[t]he general underlying purpose of section 473(b) is to promote the determination of actions on their merits." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839; accord, *Austin, supra*, 244 Cal.App.4th at p. 928.) "Because the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an

14

order permitting trial on the merits.'" (*Rappleyea*, at p. 980; accord, *McClain v. Kissler* (2019) 39 Cal.App.5th 399, 413; *Fasuyi*, at p. 696 ["[T]he remedial relief offered by section 473 is 'highly favored and is liberally applied.'"].)

B. *The Trial Court Did Not Abuse Its Discretion in Denying the Motion To Set Aside the Entry of Default*

BB contends the trial court abused its discretion in denying discretionary relief based on its finding that BB unreasonably relied on Langridge's representation there was no need to respond to the complaint because Langridge was resolving what was a misunderstanding. The trial court did not abuse its discretion.

As discussed, Frazier stated that when she contacted Langridge about service of the complaint, he told her there was a misunderstanding, that Langridge would resolve the matter, and as to the complaint, "BB need not worry about it." BB argues it was reasonable to rely on Langridge's advice not to respond to the complaint given BB's long-time relationship with Langridge and Royal, which served as a vendor of the equipment, whereas First American "was a hence-unknown, third party to BB in the transaction."

Contrary to BB's position, however, First American was no stranger to the transaction. The leases made clear that First American was the lessor, and further, BB's obligation to make payments under the lease were "absolute, unconditional and non-cancellable." The delivery and acceptance certificate likewise certifies that all equipment in the lease agreement between "'Lessee' and First American Commercial Bancorp, Inc. ('Lessor') has been delivered to and been received by Lessee." Nowhere in either the lease or the delivery and acceptance certificate is there

15

a mention of Royal or Langridge. Certainly, BB could have answered the complaint and argued on the merits that it was excused from performance under the leases. But the fact BB trusted Langridge and considered First American a third-party stranger was not an excuse for ignoring a properly served summons and complaint.

Further, Frazier was very involved in the negotiations that preceded the filing of this action. The record reflects that starting in May 2020, when BB first defaulted on its lease payments, Frazier negotiated directly with Naylon, who handled collections for First American. Frazier then obtained the lease modifications from Wuest, whom she thanked for the reduced payments. After BB defaulted on the modified leases in December 2020, Frazier again communicated directly with First American, requesting VanDeWalle arrange for the remaining printers to be picked up. It is true that VanDeWalle's subsequent communications were with Langridge (notwithstanding First American's demands to talk to Frazier directly), but the negotiations fell through when Langridge rejected VanDeWalle's December 29 offer, stating BB could only pay a "minimal amount" to keep the talks going. The next communication in the record is Alper's January 26, 2021 demand letter, followed by the filing of this action.

As the trial court found, BB presented no admissible evidence of statements made by Langridge that Frazier claims she relied on other than her recounting that Langridge stated there was a misunderstanding with First American that he would resolve. The purported texts from Langridge did not show the date, sender, or recipient, or that they were transmitted as text messages. And in light of the multiple email communications in December 2020 that failed to resolve the dispute, leading to

16

Alper's January 26 demand letter threatening litigation, it was not reasonable for Frazier to have relied on a promise by Langridge that he was going to resolve the litigation without BB responding to the complaint.  Moreover, Langridge was acting on BB's behalf and was not a representative of First American.  And BB failed to present any communications between First American and Langridge following Langridge's response to VanDeWalle's December 29, 2020 offer that would suggest there were ongoing negotiations, or that First American was prepared to stay the litigation to allow discussions to continue.

Frazier's averment that, after Langridge told her he would resolve the misunderstanding with First American, BB "heard nothing about the Complaint subsequently" and "thought that the matter had been resolved" is likewise contrary to the evidence.  We defer to the trial court's finding that Frazier received notice of First American's April 12, 2021 request for entry of default in light of the proof of service of the request on BB at the 21st Street address and Alper's averment that the notice was never returned to First American as undeliverable.  Frazier similarly denied receiving the July 6 case management statement (which referred to entry of the default), notwithstanding proof of service on BB at the 21st Street address.  Frazier provided no details as to how the notices could have been lost, for example, a history of BB not receiving mail at the 21st Street location.

On these facts, BB failed to demonstrate excusable neglect by presenting evidence showing a reasonably prudent person under the same circumstances would have ignored the complaint. (*Austin, supra*, 244 Cal.App.4th at p. 929; *Henderson, supra*, 187 Cal.App.4th at p. 230.)  Nor did BB explain why it was diligent in waiting until the precise six-month date from entry of

17

the default to file its motion to set aside the default, especially in light of notice of the request for entry of default and case management statement. (*Huh, supra*, 158 Cal.App.4th at p. 1422.) BB did not contact First American after service of the complaint for seven months, at which time Nguyen sent a letter to Alper offering to discuss settlement if First American would agree to set aside the default. BB did not call anyone at First American to inquire whether BB needed to respond to the complaint, nor did Frazier contact Langridge or VanDeWalle to confirm that a resolution had been reached.[9]

BB alternatively argues on appeal that the trial court should have granted its motion to set aside the default pursuant to its equitable powers to vacate a default based on extrinsic fraud or mistake. (See *Rappleyea, supra*, 8 Cal.4th at p. 981; *Lee v. An* (2008) 168 Cal.App4th 558, 566 ["a trial court retains discretion to vacate a default on equitable grounds, even if statutory relief is unavailable"].) However, BB did not in its motion request discretionary equitable relief based on extrinsic mistake, forfeiting the argument on appeal. (See *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1013 ["'Failure to raise specific challenges in the trial court forfeits the claim on appeal.'"].) Even

---

[9]    We acknowledge that following service of the complaint, Alper never contacted anyone at BB before requesting a default just two months later. Although it does not appear that BB had a lawyer at the time, Alper could (and should) have followed up with Mendoza (to whom he sent the demand letter) or Frazier to provide advance warning that he was going to request entry of a default. However, given the failure of BB to respond to Alper's demand letter, the complaint, the request for entry of default, or the case management statement, it was not an abuse of discretion for the trial court to deny relief to BB.

18

if the issue were not forfeited, to set aside a default based on extrinsic mistake, BB needed to "articulate a satisfactory excuse for not presenting a defense to the original action" and show diligence in seeking to set aside the default. (*Rappleyea*, at p. 982; see *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 503 [trial court abused its discretion in granting equitable relief from default where defendant failed to explain nine-month delay from the time of entry of judgment until filing motion for relief].) As discussed, BB did neither.

Although we recognize the strong public policy favoring a trial on the merits (*Rappleyea, supra*, 8 Cal.4th at pp. 978, 984), we cannot say the trial court's denial of relief was so irrational or arbitrary that no reasonable person would agree with the decision. (*Mechling v. Asbestos Defendants, supra*, 29 Cal.App.5th at p. 1249.)

## DISPOSITION

The default judgment is affirmed. First American is to recover its costs on appeal.

FEUER, J.

We concur:

SEGAL, Acting P. J.          MARTINEZ, J.

19